**Jimmie L. RODGERS and John A. Turner, Plaintiffs,**

v.

**UNITED STATES STEEL CORPORATION et al., Defendants.**

**Civ. A. No. 71–793.**

United States District Court,
W. D. Pennsylvania.

March 8, 1976.

Bernard D. Marcus, Kaufman & Harris, Pittsburgh, Pa., Jack Greenberg, New York City, for plaintiffs.

Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Carl B. Frankel, Pittsburgh, Pa., for defendants.

Michael D. McCafferty, Washington, D. C., for EEOC.

## OPINION

TEITELBAUM, District Judge.

This protracted class action for racially-based employment discrimination is presently before the Court on defendants' joint motion for leave to tender back pay, pursuant to the steel industry Consent Decrees of 1974, to "affected employees" at United States Steel's Homestead Works.

One of some 250 steel-related facilities throughout the country affected by the Consent Decrees, the Homestead Works are the focus of the instant Title VII litigation. Among the minority workers at the plant who are eligible for back pay under the Decrees are some 600 black employees of the defendant company who comprise approximately one-half of the plaintiff class certified in the action before this Court.[1] Pursuant to the terms of the Decrees, which provide for a broad reform of alleged discriminatory employment practices in the basic steel industry,[2] those members of the

1. See *Rodgers v. United States Steel Corp.*, 69 F.R.D. 382 (W.D.Pa.1975), granting plaintiffs' motion for class certification and defining the Rule 23(b)(2) class as follows:

   [F]or purposes of monetary liability or compensation of any sort, to include and to be limited to those blacks who have actually worked in United States Steel's Homestead Works at any time in the period from August 24, 1971 until May 1, 1973, on jobs in the unit represented by defendant Local 1397, and,

   for purposes of injunctive relief, to include and to be limited to those blacks who have actually worked in United States Steel's Homestead Works at any time after August 24, 1971, on jobs in the unit represented by defendant Local 1397.

2. We have had prior occasion to examine the substance and immense scope of the Consent Decrees, entered into by representatives of the government, the steel unions and nine major steel producers, and approved by the Honora-

*Rodgers* class who accept the proposed back pay tender, like all other "Decree-affected" minority employees, must waive their claims to any further injunctive or monetary relief for discriminatory practices which were in existence prior to the date on which the Decrees were entered (April 12, 1974), and consequently will be excluded as class members in this suit. Accordingly, Judge Pointer has required that these defendants—like those in other forums where similar actions are pending—obtain local court approval of the tender and of a notice of rights and release form which would accompany it.[3] Defendants now seek that approval.

Named plaintiffs vigorously oppose the tender and have moved this Court to enjoin it. They assert, *inter alia,* that both the back pay offer and the proposed form of notice of rights and release are inadequate.

After a full hearing on this matter, and careful consideration of plaintiffs' objections, I will deny the injunction and approve the Homestead tender and the accompanying notice and release forms.

## I

## THE CONSENT DECREES

It is necessary at the outset to clearly delineate what is—or more accurately what is not—before the Court in this proceeding.

Despite plaintiffs' apparent desire to obtain here an independent review of the Consent Decrees in their entirety, it is abundantly clear that a reconsideration by this Court of a nationwide settlement emanating from an action brought by the government in another forum, and of issues that have been duly considered and decided by Judge Pointer in the Federal District Court for the Northern District of Alabama and by the United States Court of Appeals for

the Fifth Circuit, would constitute nothing less than a bald arrogation of power. In short, the Alabama Consent Decrees, in and of themselves, are not now and never have been before me.

I do not think Judge Pointer envisioned a different result when he required this Court's approval of the tender *sub judice.* In my view, his directive that the tender should not be made at an affected plant until approval was obtained from those district courts where related private actions are pending was motivated by two factors: First, while Judge Pointer has endorsed the notice of rights and release which will accompany the back pay tender, that notice, where sent to members and potential members of a class action, must describe by way of an insert the present status and other characteristics of that action. Accordingly, there was (and is) a need for each affected court to approve the inserted description of the particular action before it.[4] Second, I believe Judge Pointer required submission of the proposed tender to affected district courts as a matter of comity, extended in recognition of the fact that the tender, if accepted by execution of the release, would affect the status of actual and potential class members in pending cases. Certainly, Judge Pointer did not intend that each concerned district court throughout the country undertake a fresh and totally independent review of the legality and adequacy of the nationwide settlement embodied in the Decrees, and I have neither the right nor the temerity to accede to plaintiffs' apparent request that this Court embark upon such a venture.

Accordingly, we start from the premise that the following issues have been litigated and decided in an appropriate forum, and are not before me in the instant proceeding:

3. *United States v. Allegheny-Ludlum Industries, Inc.,* C.A. No. 74–P–339–S, Memorandum and Order of January 5, 1976.

4. In this case, as in others, the notice insert has been prepared by defendants along guidelines suggested by Judge Pointer.

ble Sam C. Pointer in *United States v. Allegheny-Ludlum Industries, Inc.,* 63 F.R.D. 1 (N.D. Ala.1974), aff'd. 517 F.2d 826 (5th Cir. 1975). See *Rodgers v. United States Steel Corp., supra.*

1. The adequacy of the amount of the total Consent Decree back-pay fund of $30,940,000.00; [5]
2. The method of distributing this amount among the blacks, Spanish-surnamed Americans and women who are "affected employees" under paragraph 18 of Consent Decree I (pro rata shares across the membership of particular seniority sub-classes); [6]
3. The adequacy of the injunctive relief provided by the Consent Decrees; [7]
4. The substantive legality of the release. [8]

### RULE 23(e)

Plaintiffs also insist that the tender of back pay to eligible black employees at the Homestead Works who are members of the *Rodgers* class constitutes a settlement of that class action and is therefore directly governed by the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. I do not agree (and so ruled at the hearing conducted on February 17–18, 1976). While plaintiffs' argument appeals at first blush to a natural wont to approach a unique question simply by fitting it neatly within a well-defined area of related legal principle, a brief consideration of Rule 23(e) reveals that neither its plain language nor its underlying rationale embraces the circumstances presented here.

■ By its terms,[9] Rule 23(e) applies and is limited to the dismissal or compromise of a class action *itself, Weight Watchers of Philadelphia v. Weight Watchers International*, 455 F.2d 770, 773 (2d Cir. 1972), where application of its strictures is necessary to protect the rights of absentee or nonparty class members who may be bound or affected by a settlement of their claims by their class representatives. See, *e. g., Greenfield v. Villager Industries, Inc.*, 483 F.2d 824 (3d Cir. 1973). See also *Miller, "Problems of Giving Notice in Class Actions,"* 58 F.R.D. 313, 330 (citing cases). In contrast, the Rule does not attach to direct settlements with *individual* class members which have no effect upon the rights of others. *Weight Watchers of Philadelphia v. Weight Watchers International, supra* at 775; *American Finance System, Inc. v. Harlow*, 65 F.R.D. 572 (D.Md.1974).

---

**5.** See *United States v. Allegheny-Ludlum Industries, Inc., supra*, 517 F.2d at 862–864. We note in passing that this Court has heard evidence regarding the methodology employed by the government in negotiating the settlement figure with representatives of the companies and unions. That methodology appears to have been carefully conceived, and would seem to have furnished a reasonable approach to the arms-length negotiations which produced the back-pay fund already approved by Judge Pointer and the Fifth Circuit.

**6.** See *United States·v. Allegheny-Ludlum Industries, Inc., supra*, 517 F.2d at 852 n. 29 (citing *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 n. 154 (5th Cir. 1974)).

**7.** See *United States v. Allegheny-Ludlum Industries, Inc., supra*, 517 F.2d at 846–851 n. 28. I have already indicated, in another context, my view that the injunctive reforms embodied in the Consent Decrees are impressive. See *Rodgers v. United States Steel Corp., supra.*

**8.** See *United States v. Allegheny-Ludlum Industries, Inc., supra*, 517 F.2d at 851–862. I recognize that Judge Pointer, by Memorandum and Order of January 5, 1976, subsequently amended one aspect of the release provision to reflect the actual agreement of the parties to the Alabama settlement, and that such amendment has been challenged by way of appeal to the United States Court of Appeals for the Fifth Circuit. However, the time for tender at the Homestead Works is now at hand, and, as a stay of the entire tender process pending appeal has been denied by both Judge Pointer and the Fifth Circuit (Order of January 28, 1976), I do not consider that it would be proper for this Court to stay the Homestead back-pay offer pending resolution of the matter. This view is reinforced, if not fostered, by Judge Pointer's endorsement of the amendment, as well as by my own opinion that, despite its initial reading of the release provision (517 F.2d at 853–854), the Fifth Circuit's approval of the pre-amendment release remains applicable to the provision as amended. See 517 F.2d at 852 n. 30, 853. If this opinion is erroneous, the Fifth Circuit will enlighten us in due course as to the permissible scope of the instant release.

**9.** Rule 23(e) provides as follows:

"(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

■ It would seem apparent that the instant case falls within the latter category. The tender of back pay now at issue can in no way be deemed to constitute a settlement of the *Rodgers* class action itself. It is, rather, a compromise offer, made pursuant to a negotiated consent decree, to individual class members who are free to accept or reject it as they see fit. Those at Homestead who reject the tender will be neither bound nor prejudiced by the acceptance of others or by the Alabama settlement itself. See *Williamson v. Bethlehem Steel Corp.*, 468 F.2d 1201 (2d Cir. 1972). They will retain their causes of action against defendants and may continue to press their claims through the vehicle of the *Rodgers* suit. While the membership of the plaintiff class in that suit may require redefinition upon completion of the tender process, the action itself will not be terminated by this Court's approval of defendants' back-pay offer. Those class members who reject the tender will remain in the position they would have occupied had no tender been made, and plaintiffs' action will proceed on their behalf. In such circumstances, our review of the Consent Decree tender—necessary because Judge Pointer has required our approval and not because the tender works a settlement of this action—is not controlled by the requirements of Rule 23(e).[10]

10. This result is not altered by plaintiffs' emphasis on the binding nature of a 23(b)(2) class action. See generally *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir. 1975). That consideration pertains to the settlement of a certified (b)(2) class action itself, but is of little moment where, as here, (b)(2) class members will be bound only if they choose on an individual basis to accept the back-pay offer.

A final point should be noted, both in this regard and with respect to the discussion that follows: We are not the only Court to have considered the matters now at issue. Pursuant to Judge Pointer's directive, both the back-pay tender and its companion notice and release have been submitted to and approved by other district judges confronting Decree-affected private actions, including the Honorable Ralph F. Scalera of this Court. See *Kennedy v. Jones & Laughlin Steel Corp.*, C.A. No. 74–86 (Order of February 20, 1976). See also *Chatman v. United States Steel Corp.*, No. C–75–1239 CBR (N.D.Cal., Order of January 29, 1976); *Brewer v. Republic Steel Corp.*, C.A. No. C71–897

## II

What has been stated above should not be construed to indicate any intention on the part of this Court to carelessly or perfunctorily sanction the instant tender. Despite defendants' muted suggestion that my approval of the form and substance of their back-pay offer requires little more than a penstroke in view of prior validation of the Consent Decrees, it is apparent that this matter directly affects an important class action which is solely this Court's responsibility. Especially in light of plaintiffs' sharp challenge to the tender (a circumstance not confronting, *inter alia*, Judge Scalera), I believe we are obligated to scrutinize both the fairness of the Homestead offer—in the context of its making—and the adequacy of the notice and release which are to accompany it.

### THE BACK PAY TENDER

[3] Plaintiffs assert that the Homestead tender does not provide fair and adequate monetary relief to recipient members of the *Rodgers* class. In evaluating their contention, I have turned for initial guidance to those factors which our Court of Appeals deems relevant to a determination of the fairness of a true [23(e)] class settlement.[11] In this regard, I have considered, *inter alia*,

(N.D.Ohio, Order of February 5, 1976); *Piazza v. Wheeling-Pittsburgh Steel Corp.*, C.A. No. 73–515 (S.D.Ohio, Order of January 28, 1976). Although opinions were not written in these cases, and we are therefore deprived of the benefit of the respective judges' thinking, it is apparent that in none of the above instances was the tender deemed to constitute a Rule 23(e) settlement.

11. " . . . (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . . ; (4) the risks of establishing liability . . . . ; (5) the risks of establishing damages . . . . ; (6) the risks of maintaining the class action through the trial . . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

substantial (though *ex parte* and by no means necessarily sufficient) evidence on the question of liability in this case; I have also considered that there may be a significant disparity between the average Homestead back-pay tender and the average monetary award possible in this action.[12] Ultimately, these factors are neither determinative nor compelling. Regardless of any likelihood of defendants' liability or the potential size of plaintiffs' possible monetary recovery, I cannot characterize as unfair or unreasonable a *meaningful* tender of immediate, litigation-free back pay that does no more than offer its recipient the option of presently accepting it or rejecting it and continuing as part of a suit which may result in a greater recovery at a later time. As the Fifth Circuit stated with respect to the size of the total back-pay fund created by the Consent Decrees:

> "Absent a compelling showing that the (nationwide) average of $500 per employee represents nothing but a mere pittance, we think that sum, together with each eligible employee's free option to reject his or her tender and sue for more, especially in light of the injunctive relief which extends to all, . . . (is adequate)." *United States v. Allegheny-Ludlum Industries, Inc., supra*, 517 F.2d at 864.

That language is equally applicable in these circumstances. Indeed, if anything strikes this Court as unfair or unreasonable it is the paternalistic notion that it is in the best interests of competent adults that they be deprived of their right to receive and

freely choose whether to accept or reject defendants' compromise offer. Given the context in which it is made, I find that the Homestead tender is both fair and adequate.

## THE NOTICE OF RIGHTS AND RELEASE FORM

Our review of this matter is not yet complete—approval of the Homestead tender must rest upon a further determination that the choice which I firmly believe eligible members of the *Rodgers* class are entitled to make will be a meaningful one, and that any waiver of their rights will be voluntary and intelligent. This requires that the proposed notice and release forms provide recipient employees with sufficient information to enable an informed decision with respect to the back-pay tender. I am satisfied that they meet this requirement.

What we have referred to as the notice and release forms in this case actually consist of three separate documents:

1. A seven-page notice of rights to back pay which carefully explains, *inter alia*, the operative Consent Decree (I) and the employee's rights thereunder, the effect and scope of the release, the calculation of individual back-pay awards, appropriate procedure generally and in particular circumstances, and how to obtain further information (with an enclosure specifying when and where representatives of the Consent Decree Implementation Committee will be available at the plant to answer questions, and a footnote advising affected employees

litigation . . . ." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

**12.** The measure of that disparity is by no means certain however. I have requested and received *in camera* information regarding the amount of the average back-pay tender to be made at Homestead. That amount (which accords with the amount of the average tender that will be made to the defendant company's eligible minority males nationwide) is hardly insignificant, and plaintiffs' computation of a litigated award some eleven times as great is rendered suspect by its reliance on a formula

(average wage differentials between black and white employees) that appears to have been rejected in the only litigated Title VII case in the steel industry in which a back-pay calculation was attempted. See *United States v. United States Steel Corp.*, 371 F.Supp. 1045 (N.D. Ala.1973), vacated and remanded in part (on other grounds) *United States v. United States Steel Corp.*, 520 F.2d 1043 (5th Cir. 1975). Without predetermining the damage formula this Court would apply in the event of a finding of liability in this action, I do not think it can be assumed probable that the disparity complained of is "gross."

of their right to obtain counsel in this matter);

2. A two-page release form which specifically states the terms of the waiver;[13]

3. A four-page insert in the notice of rights—styled "Effect of Release on Pending Litigation"—which fully and accurately describes the instant (*Rodgers*) action (when commenced; parties; attorneys; nature of allegations; class action status; relief sought; position of defendants; trial status; estimated time until final resolution including possible appeals; etc.) and plainly states that acceptance of the tendered back pay operates to exclude the acceptor from membership in the *Rodgers* class.

■ I do not think further detail with respect to content is necessary here. The three documents speak for themselves, and a reading of them is perhaps the most persuasive argument in their favor. Documents 1 and 2, the notice of rights and the release form, were approved by Judge Pointer on January 14, 1976, and have since been endorsed by order of those courts to which their submission was required (see n. 10, *supra* at page 7); document 3, the insert describing the *Rodgers* case, was prepared by defendants, as previously noted, in accordance with guidelines suggested by Judge Pointer, and closely parallels those notice inserts approved by other affected courts.[14] I am in complete accord with these decisions. In my view, the proposed notice, notice insert and release forms fully apprise recipient employees of the terms of the tender and of the options that are open

to them, *cf. Philadelphia Housing Authority v. American Radiator*, 323 F.Supp. 364, 378 (E.D.Pa.1970), and assure, to the extent reasonably possible, that affected members of the plaintiff class who execute waivers will do so knowingly and voluntarily. I am not persuaded that more is required.[15]

This Court has not failed to recognize that plaintiffs' objections to the tender notice and release run less to the adequacy of the information contained therein than to the manner in which that information is presented. Specifically, plaintiffs contend that the language of all three documents is both biased in favor of acceptance of the tender and, at the same time, so complex as to be beyond the comprehension of the steelworkers who must read it. In support of their position, plaintiffs have offered the testimony of various experts in the fields of linguistics and (for want of a better term) "readability." I have listened attentively to that testimony and, candidly, cannot say that I find it to be utterly devoid of merit. Indeed, I am inclined to believe that the general question of the "readability" level of class and other legal notices is one which might well require serious judicial consideration at an appropriate time.[16] But I do not believe that this proceeding presents a proper or necessary occasion for a novel excursion into esoteric concepts of readability and pure linguistic neutrality.

In this regard, it is important to note several distinct points:

First, this Court's review of the instant notice and release forms is not an exer-

---

**13.** The release will be printed on the back of each tendered check, where the recipient must execute it in order to cash or deposit the paper. A legend imprinted on the face of the check will stress that by cashing or depositing it, the payee accepts the terms of the release. A separate copy of the release will be enclosed with the check and notice.

**14.** See, *e. g.,* the insert approved by Judge Scalera of this Court in *Kennedy v. Jones & Laughlin Steel Corp., supra.*

**15.** Plaintiffs' citation to *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *Kadwell v. U. S.,* 315 F.2d 667 (9th Cir. 1963), in support of the proposition that a

higher standard pertains herein is at best puzzling. It need hardly be stated that the entry of a guilty plea in a criminal proceeding entails a waiver of rights manifestly different from those presently at issue, and that court acceptance of such a plea is governed by a standard born of considerations that have but a distant bearing on our approval of the notice and release *sub judice.* Plaintiffs' observation that the two situations are equatable because both involve a waiver of the right to trial is quite simply meritless.

**16.** Neither the parties nor the Court has been able to find a case which addresses the "readability" level argument advanced by plaintiffs.

cise in the balancing of theoretical probabilities. Rather, it entails a pragmatic appraisal of a clearly good-faith attempt to communicate often complex information to a particular group of people. Viewed with an eye attuned to the reality of legal notices, written in an imperfect language and necessarily incorporating difficult legal terms and concepts, the documents here in question are plainly neither biased nor incomprehensible as those terms might commonly be understood. Indeed, they are easily as fair and "readable"—and certainly as complete—as most notices employed in similar circumstances.

Second, it is to be emphasized that we are not now confronting matters that might be laid to rest by a quick revision of identified objectionable segments of the tender documents. If that were the case, I would not hesitate to require the expert winnowing of a subtle linguistic bias here, or the simplification of difficult snytax there. Rather, we are dealing with alleged problems that apparently would take considerable time to solve— one of plaintiffs' experts estimated that, working with a team of other experts, it would take him some ten weeks to produce a revised notice and release which would convey all requisite information in a totally "readable" and neutral form.[17] Absent a showing that the challenged documents fail to satisfy reasonable lay standards of fairness and clarity, I am persuaded that any benefits which might theoretically be gained by such a revision are far outweighed by the detriments that would attend a lengthy delay at Homestead of an important back-pay tender that is now underway throughout the Pittsburgh valley.

Finally, I do not consider that the adequacy of the challenged notice and release forms is properly measured in the vacuum in which plaintiffs would have this Court view them. Clearly, these documents are not the sole source of tender information which will be available to affected employees at Homestead.[18] The notice itself clearly states that employees may seek further explanation of the tender and that representatives of the Implementation Committee will be available to answer any questions. Further, affected class members will of course be entirely free to discuss the terms of the tender among themselves, and undoubtedly will do so. Plaintiffs' own expert testified that such peer group discussion is the key to comprehension of difficult material. Finally, plaintiffs' counsel presently possess, and will continue to enjoy, the unfettered right to contact and consult with members of the *Rodgers* class for the purpose of advising them with respect to the options presented by the tender. I have no doubt that counsel's activities in this regard will provide an adequate counterweight to whatever subconscious bias might be said to lurk in the language of the tender notice and release forms. Considering the totality of the information available to affected class members in this case, I am not prepared to withhold approval of the Homestead tender on the mere grounds that the tender documents may fail to measure up to what defendants have aptly characterized as "the absolute norms of science."

In the final analysis, it would appear that this Court has far more confidence than plaintiffs in the intelligence and resourcefulness of the steelworkers at Homestead.

---

**17.** I intend no criticism of this expert witness in noting that, upon inquiry by the Court, he indicated that he was not particularly anxious to undertake, as *amicus curiae,* a more rapid revision of the documents aimed at eliminating those problems he deemed most significant.

**18.** Eligible members of the *Rodgers* class have in fact been aware of the Consent Decrees for some time. In July 1974, after submission to

this Court, an industry-wide "Outline of Steel Industry Civil Rights Decree" was sent to employees at the Homestead Works who were then potential members of the plaintiff class in *Rodgers.* The Outline set forth the general Decree provisions relating to injunctive relief and notified the "affected employees" that they would subsequently be receiving a tender of back pay pursuant to Consent Decree I.

The tender documents at issue in this proceeding, viewed in light of surrounding circumstances, are sufficiently informative, objective and comprehensible to enable reasonable and competent individuals to make an informed choice in this matter. I have no reason to believe that the affected steelworkers are anything less than that, or that the language of the tender notice and release forms must be reduced to a pabulum in order for them to digest its import. I am satisfied that those who choose to waive their claims in consideration of tendered back pay will do so voluntarily and knowingly.

### THE "ONE–STEP" PROCEDURE

This Court's confidence in the Homestead steelworkers extends to plaintiffs' suggestion that the "one-step" procedure which has been adopted for the tender of back pay—i. e., the transmission of a back-pay check together with the notice and release forms—is "coercive" in that it creates an "inexorable pressure on the employee to accept the tender."

Under this procedure, recipients of back pay will have 45 days from the date of mailing of the notice and tender in which to decide whether to accept or reject defendants' offer; extensions of time may be granted when an individual is unable to come to a decision within the 45-day period. In these circumstances, where tender recipients will not be required to make an immediate choice, but will have ample opportunity to reflect and seek advice on this matter, I do not perceive anything inherently "coercive" in the mere fact that affected employees will be in possession of their back-pay checks prior to the moment of their decision regarding the tender. The Homestead steelworkers are not schoolchildren, and this Court will not treat them as such. The "one-step" tender procedure has been approved by Judge Pointer in consideration of the delay and substantial risks that would attend the use of a "two-step" procedure (see pp. 69–72, 77–81 of the transcript of the January 2, 1976 hearing before Judge Pointer), and I do not believe it necessary that we deviate from his decision here.

My views on the issues discussed above are infused by an awareness that the impending Homestead tender is not the product of a shabby or suspect compromise. It is, rather, a decisive step in the implementation at a major steel facility of a Consent Decree that has been described as " . . . one of those rare instances in which the government . . . successfully negotiated a comprehensive voluntary accord." *United States v. Allegheny-Ludlum Industries, Inc., supra,* 517 F.2d at 848. The terms of that accord satisfy the policies of Title VII "to an exceptionally thorough degree," *Id.* at 881, and both the parties to it and the public are therefore entitled to expect that this Court will not obstruct the implementation of those terms absent a showing of compelling cause. Plaintiffs have failed to make such a showing. The black steelworkers at the Homestead Works are awaiting this tender of back pay. They have a right under the Consent Decrees to receive it. Those who wish to accept it should be given the opportunity to do so. Accordingly, for all of the reasons set forth above, the injunction sought by plaintiffs will be denied, and defendant's motion for approval of the Homestead tender will be granted.

The United States Equal Employment Opportunity Commission has moved this Court to approve the sending of certain documents relating to the tender offer to certain members of plaintiffs' class who have charges pending before the Commission. Judge Pointer approved the form and text of the Commission letters on January 14, 1976, and I can see no reason to preclude or delay their sending. The EEOC's motion will also be granted.

An appropriate Order will be entered in accordance with this Opinion.

### ORDER

AND NOW, to-wit, this 8th day of March, 1976, this matter having been heard

**648**

by the Court, and in consideration of the foregoing Opinion, it is hereby ORDERED, ADJUDGED and DECREED that this Court approves:

(1) the tender of back pay, pursuant to the Consent Decree in *U. S. v. Allegheny-Ludlum Industries, Inc.*, to certain past or present black employees of United States Steel's Homestead Works some of whom are members of the *Rodgers* class;

(2) the Notice of Rights found in Attachment A to Exhibit 3 to defendants' joint "Motion to Approve Tender of Back Pay Pursuant to Consent Decree in *U. S. v. Allegheny-Ludlum Industries, Inc.*," as modified by the form of insert regarding the *Rodgers* case which is attached as Exhibit 5 to said Motion;

(3) the form of release contained in Attachment B to Exhibit 3 to said Motion, modified to identify the case of *Jimmie L. Rodgers and John A. Turner, et al., Plaintiffs v. United States Steel Corporation, Local 1397, AFL–CIO United Steelworkers of America, AFL–CIO, Defendants*, D.C., 69 F.R.D. 382, in the United States District Court for the Western District of Pennsylvania; and

(4) the form of EEOC "Letters to Charging Parties" attached to Judge Pointer's Order of January 14, 1976 (all of which are appended to the EEOC's "Motion for Leave to Make a Special Appearance" filed in this case and dated February 4, 1976).

IT IS FURTHER ORDERED that plaintiffs' motion for a preliminary injunction be and the same is hereby denied.