173 P.3d 765 (2007)
2007-NMCA-158
Lorenne Rebecca RIVERA-PLATTE, and all others similarly situated, Plaintiffs-Appellees,
v.
FIRST COLONY LIFE INSURANCE COMPANY, a Virginia Corporation, Defendant-Appellee,
v.
Michael B. Hopkins, Robin H. Hopkins, and James McCoy, Objectors/Proposed Intervenors-Appellants,
Martin Sir, Objector/Proposed Intervenor-Appellant,
Paul R. Holley and Phillip Mickens, Objectors/Proposed Intervenors-Appellants,
Lisa Treat, Objector-Appellant.
Nos. 25,401, 25,402, 25,409, 25,412.
Court of Appeals of New Mexico.
May 22, 2007.
Certiorari Granted November 30, 2007.
*770 The Eaves Law Firm, P.A., John M. Eaves, Kerry Kiernan, Karen S. Mendenhall, McCary, Wilson & Pryor, Dennis M. McCary, Floyd D. Wilson, Alan R. Wilson, Alan Konrad, Albuquerque, NM for Appellee Lorenne Rebecca Rivera-Platte.
Scheuer, Yost & Patterson, P.C., Mel E. Yost, Christopher M. Grimmer, Santa Fe, NM, Weil, Gotshal & Manges LLP, Mindy J. Spector, John P. Mastando III, Alana L. Brown, Jessica D. Lubarsky, New York, NY, for Appellee First Colony Life Insurance Co.
Caddell & Chapman, Michael A. Caddell, Cynthia B. Chapman, James Juranek, Houston, TX, McClaugherty & Silver, P.C., Joe L. McClaugherty, Santa Fe, NM, for Appellants Michael B. Hopkins, Robin H. Hopkins, and James McCoy.
White, Koch, Kelly & McCarthy, M. Karen Kilgore, Santa Fe, NM, for Appellant Martin Sir.
George T. Geran, Santa Fe, NM, for Appellants Paul R. Holley and Phillip Mickens.
The Law Office of Brian K. Branch, Brian K. Branch, Albuquerque, NM, for Appellant Lisa Treat.
Certiorari Granted, No. 30,691, November 30, 2007.

OPINION
WECHSLER, Judge.
{1} This appeal stems from the entry of an order approving a settlement reached between the Class and First Colony Life Insurance Company. Seven unnamed class members appealed. This Court consolidated the appeals to resolve in a single opinion all the issues advanced. As a preliminary matter, we address the right of unnamed class members in an opt-out class action to appeal the approval of a settlement. Concluding that unnamed class members may appeal, we address Appellants' arguments that the district court erred in approving the form of the notice, in approving the settlement and the attorney fees, in denying their motions to intervene, and in denying their motions for *771 discovery. Because the district court erred in denying the motion to intervene and because the record and findings are insufficient to enable meaningful review, we reverse and remand for further proceedings.
FACTS AND PROCEEDINGS
{2} On November 9, 2000, Plaintiff Lorenne Rebecca Rivera-Platte initiated this proceeding by filing, as representative, a putative class action complaint against First Colony alleging breach of contractual, common law, and statutory obligations. The Class consists of certain life insurance policyholders who have paid monthly or semi-annual premiums (modal premiums) to First Colony or its subsidiary. In its complaint, the Class argued that First Colony knowingly concealed or failed to disclose material facts regarding the premium payments options in its insurance policies. Although the policy states that the annual premiums appearing in the policy are the maximum premiums charged, the Class complained that the disclosed cost applies only to premiums paid in single, annual installments. The option of paying monthly or semi-annual premiums results in what the Class alleged to be additional, undisclosed charges. The Class argued that First Colony's alleged failure to disclose these modal premium charges constitutes a violation of the New Mexico Unfair Practices Act (UPA), NMSA 1978, งง 57-12-1 to -24 (1967, as amended through 2005), and amounts to a breach of contract, a breach of the affirmative duty of disclosure arising out of the relationship between an insurer and the insured, and a breach of the common law covenant of good faith and fair dealing. In April 2001, the putative Class, through its putative representative, moved for class certification under Rule 1-023 NMRA.
{3} In June 2001, First Colony filed a motion to stay proceedings pending this Court's decision in Azar v. Prudential Insurance Co. of America, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909, an interlocutory appeal expected to control a threshold inquiry into the primary jurisdiction of the Insurance Division of the New Mexico Public Regulation Commission. In July 2001, the district court stayed the proceedings pending a decision in Azar. The Azar opinion, filed in January 2003, did not ultimately address the threshold jurisdictional question, and, in March 2003, the New Mexico Supreme Court denied certiorari. Azar, 2003-NMCA-062, ถถ 2, 96, 133 N.M. 669, 68 P.3d 909.
{4} In late 2002, the parties retained a mediator, and a final settlement agreement was signed and memorialized in April 2004. Following a joint motion of the parties, the district court entered an order of preliminary approval of the settlement agreement, preliminary approval of the Class for purposes of a nationwide settlement, and approval of the form and manner of notice of the settlement.
{5} Between June 14 and 18, 2004, notice of the settlement was mailed to each class member. The notice detailed the compensation to the Class, the rights of the class members to opt out or object to the settlement, the consequences of settlement, and the time, place, and purpose of the final fairness hearing. The notice also provided written disclosures regarding premium payment options, which had been omitted from the policies. Of the estimated 822,000 class members, approximately 603 people opted out of the settlement. Fifty people objected to the settlement, seven of whom are the unnamed class members bringing the present, consolidated appeal. Some objectors also filed motions to intervene as of right under Rule 1-024(A) NMRA. The objectors argued that the notice failed to provide information necessary for class members to evaluate the settlement and that the timing of the notice was intentionally designed to hinder their ability to adequately assess the fairness of the settlement. The objectors also challenged the settlement itself, arguing that its value to class members is inflated and therefore does not reflect the actual and inadequate benefit conferred. The settlement, the objectors complained, unduly benefits First Colony and class counsel. A few objectors also sought discovery to examine the fairness of the settlement and attorney fees.
{6} At the fairness hearing, held on August 3 and October 14, 2004, the district court permitted all attending objectors to speak. The district court also held a hearing on September 28, 2004, on the motions to *772 conduct discovery, which it denied on the grounds that there was no showing of collusion, improper actions, or incompetent representation and that the discovery requests were unreasonable. Having determined that the settlement was fair, adequate, and reasonable, the district court denied the motions to intervene and entered a final order approving the settlement agreement, defining and certifying the Class for purposes of the settlement, dismissing the complaint with prejudice, and releasing First Colony from future claims of the settling class members. Seven objectors appeal.
RIGHT OF UNNAMED CLASS MEMBERS TO APPEAL
{7} Article VI, Section 2 of the New Mexico Constitution provides that "an aggrieved party shall have an absolute right to one appeal." The Class contends that Appellants have no right to appeal the settlement because, having failed to successfully intervene, they are not "parties" within the meaning of Article VI, Section 2. Appellants argue that our interpretation of the term "parties" should be governed by Devlin v. Scardelletti, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). The Class and First Colony contend that Devlin and the policies underlying Devlin are not applicable to opt-out class actions such as the current action.
{8} We begin by discussing the holding in Devlin. Although we conclude that Devlin does not govern our analysis, we nonetheless discuss the portions of Devlin that are relevant to this opinion. We then address the question, not at issue in Devlin, of whether unnamed class members in opt-out class actions have an acceptable alternative means of preserving their interests. Finally, we discuss the difference between New Mexico and federal law. We conclude that Appellants are parties for the purposes of appeal.
{9} Devlin focuses on the purpose of Federal Rule of Civil Procedure 23. Devlin, 536 U.S. at 11-14, 122 S.Ct. 2005 (rejecting the argument that intervention should be required because such a requirement would be inconsistent with the purpose and structure of Rule 23). Because our Rule 1-023 is similar to the federal rule, Devlin's analysis applies to our rule as well. See Romero v. Philip Morris Inc., 2005-NMCA-035, ถ 35, 137 N.M. 229, 109 P.3d 768 (recognizing that federal law is an appropriate guide to interpretation of Rule 1-023(B)(3) because of the similarity to Rule 23(b) of the Federal Rules of Civil Procedure).
{10} In Devlin, the United States Supreme Court held that a unnamed class member was a "party" for the purposes of appeal because he objected at a fairness hearing and would be bound by the settlement from which he appealed.
What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court. Particularly in light of the fact that petitioner had no ability to opt out of the settlement, appealing the approval of the settlement is petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find legally inadequate.
Id. at 10-11, 122 S.Ct. 2005 (citation omitted). Because Devlin is premised, in part, on "the fact that petitioner had no ability to opt out of the settlement," it does not dictate the result in this case. Id. at 10, 122 S.Ct. 2005; see In re Gen. Am. Life Ins. Co. Sales Practices Litig., 302 F.3d 799, 800 (8th Cir.2002) (noting that Devlin relied on and "drew its strength from the mandatory character of the class action"); Ballard v. Advance Am., 349 Ark. 545, 79 S.W.3d 835, 837 (2002) (distinguishing Devlin on state law grounds and because Devlin involved a mandatory, not an opt-out, class action); Barnhill v. Fla. Microsoft Anti-Trust Litig., 905 So.2d 195, 199 (Fla.Dist.Ct.App.2005) (distinguishing Devlin on the basis that Devlin involved a mandatory, not an opt-out, class action), review denied, *773 926 So.2d 1269 (Fla.2006). Nonetheless, we find the reasoning of Devlin to be persuasive. See In re Integra Realty Res., Inc., 354 F.3d 1246, 1257 (10th Cir.2004) ("While Devlin involved a non-opt out class, the Court's reasoning also suggests that the right of an objecting class member to appeal must be recognized.").
{11} Class actions further the interest of efficiency in the judicial process. See Devlin, 536 U.S. at 11, 122 S.Ct. 2005. Allowing appeals by unnamed class members permits them to protect their interests but does not, according to Devlin, significantly impair the efficiency of the courts. Id. The Supreme Court concluded that if the right to appeal is limited to class members who objected at the fairness hearing, "the burden of considering the claims of this subset of class members is not onerous." Id. at 11, 122 S.Ct. 2005.
{12} The Devlin Court further concluded that requiring class members to intervene would not further the policy underlying Rule 23 because there are "only a limited number of instances where the initial intervention motion would be of any use." Devlin, 536 U.S. at 12-13, 122 S.Ct. 2005. We agree with Devlin's analysis in this regard. Allowing only class members who have intervened to appeal would create an additional consideration for the district court, but would not substantially limit the number of appeals to this Court. Id. at 12-14, 122 S.Ct. 2005. Indeed, Devlin concludes that, because the majority of objectors should be permitted to intervene, requiring intervention prior to appeal would only eliminate appeals from objectors who are not actually class members, objectors whose objections were successful, and objectors who did not timely object at the fairness hearing. Id. at 12-13, 122 S.Ct. 2005. Appeals from objectors such as those described above will be rare and, in any case, easily resolved. Id. at 13-14, 122 S.Ct. 2005.
{13} The Class and First Colony contend that Devlin is not applicable to opt-out class actions. They argue that because the Class in this case was certified under Rule 1-023(B)(3), Devlin should not apply. Class actions certified under Rule 1-023(B)(3) permit class members to opt out, preserving their rights and permitting them to sue individually if they so choose. See Rule 1-023(C)(2). Class members in class actions certified under Rule 1-023(B)(1) or (2) have no such option. The Class argues that the class members had "the complete and unfettered ability to opt out," thus providing an alternate means for class members to protect themselves from being bound by a settlement. First Colony likewise argues that "any class member who does not want to be bound by the settlement may remove [himself or] herself from the settlement class by opting-out."
{14} Appellants assert, however, that a majority of jurisdictions that have addressed the issue have extended Devlin's reasoning to opt-out class actions. Appellants rely in part on Churchill Village, L.L.C. v. General Electric, 361 F.3d 566 (9th Cir.2004), and we agree with that case. In Churchill Village, the court applied Devlin to an opt-out class action after determining that the class members "occupy precisely the status the Devlin Court sought to protect." Churchill Vill., 361 F.3d at 572. The court found that if "each objector's claim is too small to justify individual litigation, a class action is the only feasible means of obtaining relief." Id. Because the class members had no practical way to preserve their claims outside of the class action, the court found no meaningful difference between mandatory and opt-out class actions. Id. Appellants in this case are in the same position. As the district court concluded, each individual class member has only a small amount of damages. As a practical matter, Appellants had no means of preserving their claims outside of this class action.
{15} Finally, we also note that in the federal courts the right of an aggrieved party to appeal is merely statutory. See Devlin, 536 U.S. at 14, 122 S.Ct. 2005. In the courts of this state, an aggrieved party has "an absolute right to one appeal" granted by our state constitution. N.M. Const. art. VI, ง 2. We therefore have no difficulty concluding that the result in Devlin should also prevail in this case, regardless of whether the class action in question was certified under Rule 1-023(B)(1) or 1-023(B)(2), providing for mandatory class actions, or under Rule 1-023(B)(3), *774 providing for opt-out class actions. Appellants are parties with the right to appeal arguments they preserved by objecting at the fairness hearing.
ADEQUACY OF NOTICE
{16} Appellants argue that the notice provided to class members was insufficient. Rule 1-023(E) gives the district court wide discretion in providing for the content and manner in which notice of settlement is given to class members. See Rule 1-023(E) ("[N]otice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."). Again, because no New Mexico cases give guidance, we look to federal case law examining adequacy of notice of settlement to class members. See, e.g., Lopez v. Am. Airlines, Inc., 1996-NMCA-088, ถ 9, 122 N.M. 302, 923 P.2d 1187; see also Fed.R.Civ.P. 23(e)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.").
{17} "The standard for the settlement notice under Rule 23(e) is that it must fairly apprise the class members of the terms of the proposed settlement and of their options." In re Integra Realty Res., Inc., 262 F.3d 1089, 1111 (10th Cir.2001) (internal quotation marks and citation omitted); see also Thompson v. Metro. Life Ins. Co., 216 F.R.D. 55, 67 (S.D.N.Y.2003) (articulating same standard and emphasizing that there are no rigid standards governing the content of settlement notice). We review the district court's order providing the form of notice and the procedure for giving notice for abuse of discretion. See In re Four Seasons Sec. Laws Litig., 525 F.2d 500, 503 (10th Cir.1975). Appellants claim that the notice was deficient under Rule 1-023 and constitutionally invalid because it did not provide enough time before the fairness hearing, because it required procedures for objecting that placed an undue burden on objectors, and because the language of the notice is difficult to understand and fails to contain all the relevant information. We address these arguments in turn and conclude that the district court did not abuse its discretion.
{18} Appellants first argue that the notice gave class members insufficient time in which to file objections, find an attorney in New Mexico, and appear at the fairness hearing. The notice was mailed by June 18, 2004, and the fairness hearing was scheduled for August 3, 2004, over six weeks later. The district court waived the notice's time frame for objections and the intervention requirement by permitting all parties and attorneys who appeared at the fairness hearing to object to the settlement. Notably, none of Appellants filed motions to continue the hearing in order to prepare. In support of their argument, Appellants cite Roller v. Holly, 176 U.S. 398, 408-09, 20 S.Ct. 410, 44 L.Ed. 520 (1900) (concluding a violation of due process occurred when there were only five days between receipt of a notice and the day the party was required to appear given that it would have taken the party four full days of travel to arrive), for the proposition that we should "consider[] the difficulty of the steps required by the notice to comply within the time frame allowed." We agree with this general proposition. However, we believe that six weeks was adequate time to make preparations to object at a fairness hearing, including hiring an attorney. See, e.g., Miller v. Republic Nat'l Life Ins. Co., 559 F.2d 426, 429-30 (5th Cir.1977) (concluding sufficient notice was given when "[t]here were almost four weeks between the mailing . . . and the settlement hearing"); Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir.1977) (concluding notice was "more than adequate" when there were twenty-six days between the mailing and the deadline for opting out).
{19} Second, Appellants complain that the notice of settlement had a chilling effect on objections by requiring represented class members to successfully move for intervention before objecting at the fairness hearing. We are not persuaded. No class members have come forward to argue that they were prevented from filing objections or objecting in person at the fairness hearing. Moreover, the district court allowed all objections to be heard despite its denial of the motions to intervene. While we agree with Appellants that objectors play an important role in class actions, particularly when the *775 parties settle, see, e.g., White v. Auerbach, 500 F.2d 822, 828 (2d Cir.1974) ("[I]t is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements[.]"), we do not agree that the district court abused its discretion. See Bonime v. Doyle, 416 F.Supp. 1372, 1381 (S.D.N.Y.1976) ("We cannot agree, however, if indeed [the objectors] seriously mean to suggest it, that the inclusion of [requirements that class members file notices and statements before objecting] should bar approval of the settlement if it is otherwise fair and reasonable.").
{20} Third, Appellants argue that the notice terms are not understandable because the font is too small and the content is overly verbose and formalistic. The parties filed opposing expert affidavits addressing this issue. Given the district court's task of reviewing the practicalities of notice, we are not persuaded that the district court abused its discretion in holding that the language of the notice is as understandable as practicable under the circumstances. See Rodgers v. U.S. Steel Corp., 70 F.R.D. 639, 645-47 (W.D.Pa.1976) (noting that the court's task is "a pragmatic appraisal of a clearly good-faith attempt to communicate often complex information to a particular group of people" rather than "a novel excursion into esoteric concepts of readability and pure linguistic neutrality," and stating that the notice need not be "reduced to a pabulum in order for [class members] to digest its import").
{21} Fourth, Appellants claim that the notice of settlement did not provide sufficient information to evaluate the fairness of the settlement. Specifically, they challenge the notice's failure to detail the damages suffered by the Class as a whole or individually, the amount of damages the Class is entitled to recover, and the obstacles to recovery if the case were tried. The language of the notice sets forth the claims asserted by the putative Class; the fees and the annual percentage rates (APRs) that are the basis of the class action; the class definition; the compensation for the Class categorized by when the insurance policy was issued; recovery options; the way to receive those benefits; the maximum amount of attorney fees and cash incentive for the class representatives; the rights of the class members, and the manner in which they may opt out of the Class, object to the settlement, be represented by counsel, and appear at the hearing; and the binding effect of the settlement. Because this information fairly apprises the class members of the settlement terms and the class members' options, it satisfies due process and Rule 1-023(E).
{22} Appellants cite In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1105 (5th Cir.1977), for the proposition that the notice may not omit material facts. However, Nissan Motor Corp. recognized that material facts may be omitted and the notice need not be perfect. Id. at 1104. While we do not doubt that some class members would have preferred to have additional information included in the notice, the form of the notice is nine pages of small, condensed type. Additional information might well have "confuse[d] class members and impermissibly encumber[ed] their rights to benefit from the action." Id.
{23} Appellants do not cite, and we are not aware of, any authority holding that settlement notice is unacceptable when it fails to set forth the damages sustained by the class or by the individual members. To the contrary, courts have rejected specific contentions that a notice omitting the liability is constitutionally deficient, and we agree. See, e.g., Thompson, 216 F.R.D. at 67 ("Neither Rule 23 nor due process, however, requires that the notice report the estimated value of damages."); see also Boggess v. Hogan, 410 F.Supp. 433, 442-43 (N.D.Ill.1975) (upholding the notice when appellants complained that the notice failed to state a damage estimate and permit comparison with the settlement terms), opinion supplemented by 410 F.Supp. 443 (N.D.Ill.1976); Fischer v. Madway, 336 Pa.Super. 289, 485 A.2d 809, 811 (1984) ("[A] settlement notice is not rendered inadequate merely because it does not contain an estimate of the maximum damages potentially recoverable."). In this situation, we cannot say that the district court abused its discretion by approving the notice without including a statement of the total potential liability of First Colony.
*776 {24} Nor did the notice's failure to detail the obstacles to the Class's recovery upon a trial on the merits render the notice deficient. Language in the notice states that "the Class faced the possibility that many of the claims in this case could have been disposed of pursuant to a motion for summary judgment before trial" and that "there was a risk that the Class would not have prevailed on its claims against First Colony even if those claims eventually went to trial, in which case the Class would receive nothing." Given the general risks explained in the notice, we understand Appellants to argue that the notice should have included the specific legal arguments for and against First Colony's liability and weighed the likelihood of the Class's success at trial. We believe that such a requirement for notice is unnecessary, overly burdensome, and unprecedented. The language in the notice strikes a reasonable balance in explaining the risks of litigation and avoiding detailed and confusing legalese. See Boggess, 410 F.Supp. at 443 ("There is no authority for the proposition that the notices explore all of the underlying issues in the lawsuit. Ambiguities regarding the substantive aspects of the litigation could be resolved by examining the pleadings on file with the clerk."). We do not agree with Appellants' arguments that the notice was deficient.
{25} Finally, First Colony established and set forth in the notice of settlement a toll-free telephone number, a website, and a mailing address to answer questions about the class action and provide further assistance to the Class. See, e.g., Fischer, 485 A.2d at 811 ("The notice need not provide a complete source of settlement information, and class members are not expected to rely upon the notices as such."); cf. Rodgers, 70 F.R.D. at 646 (refusing to view the notice "in [a] vacuum" and finding it to be sufficient, in part because it "clearly states that [class members] may seek further explanation . . . and that representatives . . . will be available to answer any questions"). The notice was therefore sufficient insofar as it informed the class members of the manner in which to obtain additional information.
APPROVAL OF THE SETTLEMENT
{26} Approval of a settlement class action is appropriate if the district court concludes that the class meets the requirements of Rule 1-023 and that the settlement would be fair, adequate, and in the best interests of the class. See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig. (In re GM Trucks), 55 F.3d 768, 785 (3d Cir.1995) (relying on the language of Rule 23(e)), modified on other grounds by Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). We review the district court's settlement approval under a mixed standard of review. "First, we review de novo whether the district court applied the correct law. If the district court has applied the correct law, we then review its . . . decision to see whether the court abused its discretion[.]" Murken v. Solv-Ex Corp., 2006-NMCA-064, ถ 21, 139 N.M. 625, 136 P.3d 1035 (citation omitted) (applying the same standard of review to a certification decision). The district court abuses its discretion if it misapplies or misapprehends the law or if its decision is not supported by substantial evidence. Berry v. Fed. Kemper Life Assurance Co., 2004-NMCA-116, ถ 25, 136 N.M. 454, 99 P.3d 1166 ("If the district court has applied the correct law, we will uphold its decision if it is supported by substantial evidence."); Brooks v. Norwest Corp., 2004-NMCA-134, ถ 7, 136 N.M. 599, 103 P.3d 39 ("In New Mexico, . . . a district court abuses its discretion when it misapprehends the law or if the decision is not supported by substantial evidence.").
{27} We begin by discussing the factors the district court should consider before approving a settlement. As part of this discussion, we address the practice of simultaneously certifying a class for settlement purposes only. We then review the district court's findings and the record to determine whether the district court properly considered the factors in reaching its conclusion. Because the record does not reveal that the district court considered the factors necessary to make determinations regarding certification and regarding the fairness, adequacy and reasonableness of the settlement, we reverse the district court's approval of *777 the settlement and remand for further proceedings in light of this opinion. We recognize that our evaluation includes a review of the facts, which we provide as a necessary framework for our analysis. Our review is meant to be illustrative, and it is not meant to limit the district court in its factfinding pursuit. On remand, it will be the district court's responsibility to evaluate the evidence presented, determine the relevant facts, and determine how these facts apply to the legal requirements discussed in this opinion. Finally, we examine the district court's award of attorney fees and reverse and remand for further consideration.
A. Certification
{28} Appellants argue that "[t]he Court seemed to rely upon the fact that it felt the interests of the objecting class members were adequately represented by the Class Representative." Moreover, Appellants assert that a conflict of interest exists between the named class member, Lorenne Rebecca Rivera-Platte, and the unnamed class members. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir.2000) ("The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). Appellants make this argument in the context of appealing the denial of their motions to intervene. We believe these arguments are better addressed, however, in the context of certification. Cf. In re Cmty. Bank of N. Va., 418 F.3d 277, 314 (3d Cir.2005) ("In the class action context, the [interest and impairment] prongs of the [intervention] inquiry are satisfied by the very nature of Rule 23 representative litigation."). Mindful of the judiciary's role as a fiduciary in a class action, we briefly address certification requirements in the context of settlement-only classes. See In re N.M. Indirect Purchasers Microsoft Corp., 2007-NMCA-007, ถ 12, 140 N.M. 879, 149 P.3d 976 (discussing the district court's duty to examine attorney fee awards). We note that Appellants argued in the district court that the $30,000 incentive award was too large. Because Appellants have not briefed this issue on appeal, we do not address it.
{29} A court's approval of a settlement and consequent dismissal of the class action pursuant to Rule 1-023(E) are steps that occur in addition to the court's evaluation of the requirements for class certification under Rule 1-023(A) and (B). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." Id. This concern, regarding the adequacy of representation, is dominant, despite the fact that trial will not be held because settlement is proposed. See id. Certification of the Class in this case was an integral part of the settlement approval because the Class was certified for purposes of settlement only. See id. at 622, 117 S.Ct. 2231 ("Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted-that if a settlement is `fair,' then certification is proper."). The certification standards are important in the context of settlement-only classes because they require courts to measure the proposed class representation and settlement objectively, without depending on "the court's gestalt judgment or overarching impression of the settlement's fairness." Amchem, 521 U.S. at 621, 117 S.Ct. 2231; see In re GM Trucks, 55 F.3d at 778 ("[W]e hold that a finding that the settlement was fair and reasonable does not serve as a surrogate for the class findings[.]"). For this reason, the district court must consider the certification requirements and find that certification was proper in order to ensure that the settlement is fair, adequate, and reasonable for all defined class members. See Amchem, 521 U.S. at 619-20, 117 S.Ct. 2231 (stating that specifications of Rule 23, which are "designed to protect absentees by blocking unwarranted or overbroad class definitions[,] demand undiluted, even heightened, attention in the settlement context"); In re Mego, 213 F.3d at 458 ("Settlements that take place prior to formal class certification require a higher standard of fairness."); In re GM Trucks, 55 *778 F.3d at 800 (concluding that the lower court's failure to comply with the Rule 23 certification requirements when certifying a class for settlement "is a plain error of law" and thus an abuse of discretion); see also Brooks, 2004-NMCA-134, ถ 9, 136 N.M. 599, 103 P.3d 39 (stating that the district court must conduct "a rigorous analysis" of whether the certification requirements have been met in order to "ensure that [the] class action is not only efficient, but that it is a fair method to all parties, including absent class members and defendants.").
{30} Certification is proper if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
Rule 1-023(A)(1)-(4). The district court is also required to find that the requirements of Rule 1-023(B)(1), (2), or (3) are met. In this case, because the Class was certified under Rule 1-023(B)(3), the district court should have determined whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [whether] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, the district court was required to consider:
(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
(d) the difficulties likely to be encountered in the management of a class action.
Rule 1-023(B)(3)(a)-(d). The district court is not required, however, to consider the difficulties of proceeding to trial, because the Class was certified for settlement purposes only. See Amchem, 521 U.S. at 619-20, 117 S.Ct. 2231.
{31} In deciding to preliminarily approve certification, the district court made no findings except "that a class should be preliminarily certified for settlement purposes." In its final order approving the settlement and certifying the Class, the district court similarly entered no relevant findings. The lack of findings frustrates this Court's ability to conduct meaningful review because it does not enable us to determine whether the district court applied the correct law. The district court did, however, make two relevant statements during hearings. First, in the hearing on discovery, the district court stated that the small recovery for each individual plaintiff is "why this particular situation falls quite neatly in Rule 23, . . . because usually you have a large number of people who have smaller damages, and they โ it's really not prudent to try and litigate them on their own. It's not cost-effective." Second, during the final hearing on the motions to intervene and approval of the settlement, the district court stated, "[T]his is a perfect situation for a Class action, because you have de minimis damages." It therefore appears that the district court considered the factors under Rule 1-023(A)(1) and (B)(3)(a). Because the record is otherwise bare, we are not able to determine the other facts the district court used to support certification. For the reasons stated below, we conclude that there was not sufficient evidence of the appropriateness of certification in the record in any event.
{32} The Class presented arguments with respect to certification at the initial fairness hearing. With respect to Rule 1-023(A), the Class argued that it was extremely numerous, with 822,097 members; that the commonality requirement was "easily met," because the contracts are "essentially identical;" that the claims of the named plaintiff "are the same claims and are based on the same legal theory as the claims of the Class;" and that representation was adequate. The Class also acknowledged that it *779 was required to meet the criteria in Rule 1-023(B), and the Class was certified under Rule 1-023(B)(3). The Class argued to the district court that a class action was the superior method of adjudication because of "the small amounts of additional premiums paid by each of the Class Members." It stated that "there are no competing actions against First Colony in any other jurisdiction, to our knowledge." Finally, the Class argued that "it's desirable to concentrate the litigation in this forum." We detail the evidence in the record supporting these arguments below.
{33} The Class filed the affidavit of Christopher H. Hause, the actuary hired to review the information provided by First Colony. In his affidavit, Hause stated that he reviewed "information . . . of a type generally and reasonably relied upon by actuaries" and concluded that "the number of individual policies representing class members is 822,097." Hause's affidavit does not state whether some class members might own multiple policies. There is therefore no information in the record indicating exactly how many class members exist. Nonetheless, the district court's oral finding that Rule 1-023(A)(1) was satisfied is supported by the great number of policies sold. Cf. Berry, 2004-NMCA-116, ถ 41, 136 N.M. 454, 99 P.3d 1166 (upholding a numerosity finding when the class members consisted of 200,000 policyholders).
{34} With respect to the argument that there are common questions of law or fact, we find no support in the record. The affidavit of Shawn D. Parks, a vice president and an actuary at First Colony, indicates that at least forty-five different policy forms were sold to class members. Some class members may have been sold policies with unidentified forms. The actual policies have not been made part of the record. It is therefore impossible for us to determine whether the Class's claim, that the policies are "essentially identical," is correct. Cf. id. ถถ 13-14 (comparing insurance policies and application forms to determine whether common questions of fact existed). The Class also argued that "the conduct of First Colony was basically the same towards all Class Members," but has not pointed to any evidence in the record supporting that statement. Finally, the Class did submit a "survey of the law regarding duty of disclosure." This twenty-three page document summarizes the relevant law of the fifty-one jurisdictions in which policies were sold, both with respect to the implied covenant of good faith and fair dealing and with respect to the duty to disclose material facts. Our review of the summary reveals significant differences. For example, according to the summary, in some jurisdictions breach of the covenant of good faith and fair dealing constitutes a tort. In other jurisdictions, it appears that breach of the covenant sounds in contract. This difference might have a profound effect on the amount of damages recoverable by class members. Because the record fails to reflect an issue of fact or law that is common to all members of the Class, certification should not have been granted. On remand, the parties may submit more evidence that will enable the district court to determine whether common questions exist.
{35} In addition to finding under Rule 1-023(A)(2) that there are common questions of law or fact, the district court was required to find that the common questions "predominate over any questions affecting only individual members" under Rule 1-023(B)(3). Because the requirement of Rule 1-023(A)(2) was not established, Rule 1-023(B)(3) has also not been satisfied. On remand, the district court should consider evidence about differences in the contracts, differences in the disclosures, and differences in the law applicable to members of the Class. If the law of the jurisdictions is unclear or susceptible to different results, certification as a multistate class action may be inappropriate. See Ferrell v. Allstate Ins. Co., 2007-NMCA-017, ถ 47, 141 N.M. 72, 150 P.3d 1022, cert. granted, 2007-NMCERT-001, 141 N.M. 164, 152 P.3d 151.
{36} In discussing adequacy of representation under Rule 1-023(A), the Class argued only the following:
And I think adequacy is also easily satisfied. We have all filed our affidavits, all the Counsel, together with our resumes, setting forth our experience, some of which is known well to the *780 Court. We also filed the affidavit of [the mediator] Mr. Stelzner, who also commented on the confidence and professionalism of both Defense Counsel and Plaintiffs' Counsel.
This argument is insufficient because Rule 1-023(A)(4) is not satisfied by a showing that counsel is adequate. We agree with the Class that there is sufficient evidence in the record that its counsel is very competent. But Rule 1-023(A)(4) requires both that qualified counsel diligently prosecute the case and that the class representative adequately represent the class. E.g., Amchem, 521 U.S. at 625-26 & n. 20, 117 S.Ct. 2231 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. . . . The adequacy heading also factors in competency and conflicts of class counsel."); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998) (asking whether the named plaintiffs and counsel have conflicts of interest and whether they will vigorously represent the class). We must therefore consider whether sufficient evidence exists to support a finding that Rivera-Platte, the representative party in this case, protected the interests of the absent class members.
{37} Although Rivera-Platte did not testify and was not deposed, she did execute an affidavit that is part of the record on appeal. Rivera-Platte's affidavit states that she purchased life insurance from First Colony in 1998 and that she pays her premiums quarterly. She therefore qualifies as a member of Tier II. She had worked in the insurance industry and believed that "those in the financial services industry need to fully and fairly advise clients of the rates and amounts of extra charges for periodic payments." Rivera-Platte also stated that she had been involved in the litigation and that she had reviewed the settlement and found it to be fair. Finally, Rivera-Platte stated the following:
I understand the fiduciary duties which a class representative owes to the class. I believe that I understand those duties, and I have accepted them. I also understand my obligations as a class representative with respect to the payment of my proportionate share of costs in the event we had lost the case, and I accepted those responsibilities as well.
On appeal, Appellants have not pointed to any evidence that Rivera-Platte did not understand her responsibilities or that she would not adequately represent the Class.
{38} Despite the failure of Appellants to argue that Rivera-Platte did not adequately represent their interests, representation by a single class member is particularly problematic in light of the fact that this settlement contains four subclasses. See Rule 1-023(C)(4)(b) (requiring that "each subclass [be] treated as a class, and the provisions of this rule shall then be construed and applied accordingly"). In Amchem, the Supreme Court concluded that the "global compromise" imposed on the entire class resulted in "no structural assurance of fair and adequate representation for the diverse groups and individuals affected." Amchem, 521 U.S. at 627, 117 S.Ct. 2231. The Court held that "the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." Id. (internal quotation marks and citation omitted); see also Hanlon, 150 F.3d at 1021 (finding no conflict of interest when named representatives included residents of each jurisdiction and owners of every type of vehicle); Betts v. Reliable Collection Agency, Ltd., 659 F.2d 1000, 1005 (9th Cir.1981) (stating that each subclass must be represented by a member of that subclass). Likewise, in this case, Rivera-Platte could not adequately represent members of all four subclasses.
{39} We next turn to the considerations of Rule 1-023(B)(3)(a)-(d). There is evidence in the record supporting the district court's finding that class members have a limited interest in pursuing their claims individually. The Hause affidavit states that "the average modal loading paid by each class member is approximately $109." Based on this evidence, the district court could have appropriately concluded that no class member had a strong interest in pursuing an individual *781 claim, thus satisfying Rule 1-023(B)(3)(a). In addressing Rule 1-023(B)(3)(b), the Class argued that no other actions had been filed against First Colony in related matters. This argument appears to be sufficient. With respect to the desirability of New Mexico as the forum state under Rule 1-023(B)(3)(c), the Class argued that the fact that other similar class actions have been appealed to this Court made litigation here preferable. We agree with the Class that having some relevant law as a basis is helpful. Finally, while we are not aware of any argument made by the Class with respect to the ease or difficulty of case management under Rule 1-023(B)(3)(d), the district court's experience trying similar cases may have enabled it to consider this factor. Thus, we conclude that the district court had before it sufficient information to enable it to consider the factors under Rule 1-023(B)(3)(a)-(d).
{40} Although the district court did have sufficient information before it with respect to the Rule 1-023(B)(3)(a)-(d) factors, it did not have sufficient information to determine whether the Rule 1-023(A)(2)-(4) factors were met. In order to certify a class action, the district court must find that the requirements of both Rule 1-023(A) and (B) are satisfied. Because in this case the district court did not have sufficient information before it with respect to the Rule 1-023(A)(2)-(4) factors, it should not have approved the settlement. On remand, the district court is instructed to take additional evidence. The district court should consider approving the settlement only if it concludes that certification should be granted.
B. Factors for Determining Fairness of Settlement
{41} New Mexico has not adopted a standard by which to evaluate the fairness of a class action settlement, and the parties disagree about the factors that should be considered. Courts differ in their approaches to determining the fairness of a settlement agreement, "[b]ut the factors that go into making that determination are not elaborated and, necessarily, turn on the facts and circumstances involved in each case." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure ง 1797.1, at 77 (3d ed.2005). Plaintiffs, First Colony, and some Appellants encourage us to apply the following four factors:
(1) whether the proposed settlement was fairly and honestly negotiated;
(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4) the judgment of the parties that the settlement is fair and reasonable.
Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir.1984). Other Appellants urge us to apply the following nine factors, known as the "Grinnell factors" when reviewing the substantive fairness of a class settlement:
(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.
D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir.2001) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), overruled on other grounds by Missouri v. Jenkins, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).
{42} Common themes emerge from the various tests, and we glean the following for use as our framework for analyzing the fairness of the settlement. First, we examine the settlement process, including the adequacy of discovery, the fairness of the process afforded objectors, and the fairness and honesty of the negotiation. Then we look at the risks of litigation, including the merits and *782 complexities of the parties' claims and the potential duration and cost of trial. We view the reasonableness of the settlement in light of the risks of litigation and the possible recovery at trial. Finally, we examine the class members' reaction to the settlement.
{43} The settlement proponents have the burden to prove that the factors weigh in favor of approving the settlement as fair, adequate, and reasonable. In re GM Trucks, 55 F.3d at 785. In our analysis, we give due deference to the factual findings of the district court. E.g., Bd. of Trs. of the Tecolote Land Grant v. Griego, 2005-NMCA-007, ถ 7, 136 N.M. 688, 104 P.3d 554.
{44} The district court's findings, however, are very limited. Appellants complain that the findings and conclusions are generalized and conclusory and contain boilerplate language that fails to articulate how and whether the district court weighed the factors when approving the settlement. See In re Integra Realty Res., Inc., 354 F.3d at 1268 ("[A] reviewing court [must] have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.") (second alteration in original) (internal quotation marks and citation omitted). In response to this argument, the Class and First Colony contend that Appellants waived their right to attack the findings and conclusions because they failed to submit proposed findings and conclusions. See Wagner Land & Inv. Co. v. Halderman, 83 N.M. 628, 630, 495 P.2d 1075, 1077 (1972) (holding that the plaintiffs waived their right to a review of the evidence on appeal when they failed to request findings and conclusions). Rule 1-052 NMRA, regarding findings and conclusions, was revised in 2001 to omit any reference to preservation of error. See Rule 1-052 cmt. 3. The committee comment regarding this revision stated that preservation is a matter for the appellate rules. The Class and First Colony do not argue that Appellants failed to preserve their argument. Thus, we address Appellant's contentions.
{45} This Court strongly encourages the district courts to enter findings in class action cases in order to facilitate meaningful review, even though we recognize that findings are not required. Brooks, 2004-NMCA-134, ถ 36, 136 N.M. 599, 103 P.3d 39; Salcido v. Farmers Ins. Exch., 2004-NMCA-006, ถ 19, 134 N.M. 797, 82 P.3d 968; see generally Rules 1-023; 1-052. We therefore begin by examining the findings made by the district court. In the absence of findings, we look to the record for explanation of the district court's rationale and evidence to support its decision. Cf. Murken, 2006-NMCA-064, ถถ 4, 25, 139 N.M. 625, 136 P.3d 1035 (concluding the appellants had not shown that the district court failed to rigorously analyze the pertinent factor when the court had "considered extensive documentary evidence, affidavits, and pleadings contained in the record"); Brooks, 2004-NMCA-134, ถ 36, 136 N.M. 599, 103 P.3d 39 (concluding the record was sufficient to support the district court's determination despite the fact that its findings had only "identified the legal standards . . . and provided the general reasons for its decision"); Berry, 2004-NMCA-116, ถถ 19-20, 136 N.M. 454, 99 P.3d 1166 (relying on the district court's oral explanation in which it addressed each of the factors in turn, resolving factual disputes as it explained its conclusion that each factor had been met).
{46} In its final order, judgment of dismissal with prejudice and release, the district court "conclude[d] that the Settlement Agreement is fair, adequate and reasonable, and that it should be approved." The district court also found:
7. The amount of oral and written discovery, confirmatory discovery, factual information discovered by Class Counsel and independent investigation by the attorneys and their experienced consultants, and/or experts in this matter to date, and the factual record compiled, suffices to have enabled Class Counsel to make an informed decision as to the fairness and adequacy to the Class of the proposed Settlement.
The district court's oral statements shed only very limited light on the analysis. The district *783 court stated that the objectors' arguments are legally insufficient, not supported by competent evidence, and do not warrant "go[ing] behind the settlement." The district court further stated, "[T]he settlement is fair and adequate, was done at an arm's-length transaction, and I'm going to approve of the settlement." These findings are particularly troublesome because, given the district court's duty to independently "go behind the settlement," they may indicate that the district court did not apply the correct law. The parties do not point to additional findings in the record addressing approval of the settlement, and we have likewise not been able to find any. It therefore appears from the record that the district court did consider the process of settlement and, after reviewing the record for substantial evidence, we agree with the district court that the settlement process weighed in favor of the settlement. However, the district court made no findings, written or oral, with respect to the other factors. We review the record for explanation of the court's rationale and to determine whether sufficient evidence exists to support the court's conclusion that the settlement should be approved.
1. The Settlement Process
{47} As part of our review of the settlement process, we address Appellants' challenges to the level of discovery completed, the due process afforded objectors at and before the fairness hearing, and the conduct of the negotiations.
a. Discovery
{48} Appellants argue that the settlement process was inadequate because there was insufficient discovery completed for class counsel and the district court to measure the fairness of the settlement. Specifically, they complain that there was no formal discovery taken. The record reflects no depositions and no written discovery responses. Appellants also complain that the informal discovery gathered by the entity, Hause Actuarial Services, was not made available or verifiable.
{49} Even when a settlement is reached early in the litigation, prior to formal discovery, the settlement may be approved if the plaintiffs "have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations." Strang v. JHM Mortgage Sec. Ltd. P'ship, 890 F.Supp. 499, 501 (E.D.Va.1995). The discovery Appellants argue is missing is the data upon which the actuary, Christopher H. Hause, based his calculations as to class damages, First Colony's claimed damage offsets, and the dollar amount of the settlement. In short, Appellants complain that the discovery was not "formal" and that it was impossible to double-check the information provided to Hause.
{50} Hause is an actuary working in the field of life and health insurance. He was engaged by the attorneys in the litigation for his advice with respect to the accuracy of information provided by First Colony. Hause evaluated the members belonging to the Class and the modal loadings paid by class members as reported by First Colony, checked the accuracy and appropriateness of the various settlement options offered, and provided other input and review as needed. Hause reported that he had corresponded with First Colony several times and had engaged in two telephone conference calls to further increase his understanding and confidence in the data and the various sources and to request additional information to assist in his review and verification of the information provided.
{51} There is no indication that Hause was engaged to obfuscate the issues or hide the information available, nor does it appear that class counsel entered the settlement based upon uneducated guesswork. To the contrary, in an apparent effort to ease tension between class counsel and First Colony over discovery and to deal at arm's length without the expense and time of formal litigation discovery, the parties agreed to use an objective, neutral, and experienced third party to gather and assess the relevant information in negotiating a compromise. Such a process seems appropriate to accomplish the goals of a fair settlement. See 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions ง 11:45, at 128 (4th ed. 2002) ("One of the major reasons courts encourage settlement is *784 to reduce the cost of litigation, a factor strongly favored by Congress."); Cotton v. Hinton, 559 F.2d 1326, 1332 (5th Cir.1977) ("Being an extra judicial process, informality in the discovery of information is desired."). We therefore conclude that sufficient evidence supports the district court's finding that this factor weighs in favor of settlement.
b. Process Afforded Objectors
{52} Appellants argue that the settlement process was unfair because they were denied the opportunity to cross-examine the affiants supporting approval of the settlement and because their requests for discovery were denied. There is no consensus on an objector's right to cross-examine witnesses at hearings on class action settlements. See United States v. Oregon, 913 F.2d 576, 582 (9th Cir.1990) (observing that some circuits have permitted cross-examination and others have rejected it). In support of their right to both discovery and cross-examination, Appellants rely on Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir.1975), and Greenfield v. Villager Industries, Inc., 483 F.2d 824, 833-34 (3d Cir.1973). In these cases, the courts, looking at the totality of the circumstances, particularly the inadequacy of notice and the records, held that the objectors' rights to due process were violated, stating that "`it is elemental that an objector at such a hearing is entitled to an opportunity to develop a record in support of his contentions by means of cross examination and argument to the court.'" Girsh, 521 F.2d at 157-58 (quoting Greenfield, 483 F.2d at 833). The Ninth Circuit rejected this proposition, stating that "[t]he growing rule is that the trial court may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." Oregon, 913 F.2d at 582 (internal quotation marks and citation omitted); see also Plummer v. Chem. Bank, 668 F.2d 654, 659 (2d Cir.1982) (stating that "we do not expect district judges to convert settlement hearings into trials on the merits," but "[t]here must be some evidentiary foundation in support of the proposed settlement") (internal quotation marks and citation omitted). We believe that the Ninth Circuit's approach, permitting the district court discretion in managing its case to reach a reasoned decision, is more appropriate in considering the facts and circumstances of each case.
{53} In the present case, Appellants argue that they "were unable to explore the most critical facts relevant to a finding of the settlement's fairness." In particular, Appellants claim that the Hause affidavit is conclusory and does not provide sufficient information. We are not persuaded that the district court abused its discretion by not requiring oral testimony. Nonetheless, in light of the fact that Appellants had no access to any discovery, including the informal discovery already undertaken by the Class, and in light of the sparse record supporting the settlement, we are persuaded that the district court did not have sufficient evidence to find that this factor weighs in favor of settlement. See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187 (10th Cir. 2002) (concluding that due process was not violated by denial of cross-examination when objectors to a class action settlement "had access to significant discovery in this matter"); In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F.Supp. 450, 563-64 (D.N.J.1997) (concluding that cross-examination was not necessary in light of the fact that objectors "had access to everything that the parties' experts reviewed in forming their conclusions"), aff'd in part, rev'd in part on other grounds, 148 F.3d 283 (3d Cir.1998).
c. Conduct of Negotiations
{54} The Class and First Colony contend that they negotiated at arm's length in a long and difficult process that became so contentious they required the assistance of a mediator, in part to facilitate discovery between the parties and to break through stalemates. See County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1323 (2d Cir. 1990) ("[T]he presence of the court-appointed mediator during the precertification hearings helped ensure that the proceedings were free of collusion or undue pressure.") (internal quotation marks and citation omitted), overruled by implication in part on other grounds by Johnson v. Nyack Hosp., 964 F.2d 116, 120-23 (2d Cir.1992) (holding that *785 the primary jurisdiction doctrine may require the federal courts to defer to a state agency even when federal law is at issue). The district court agreed, finding that the settlement "was done at an arm's-length transaction." We defer to the district court's finding if it is supported by substantial evidence. See Gonzales v. Lopez, 2002-NMCA-086, ถ 26, 132 N.M. 558, 52 P.3d 418.
{55} In his affidavit, the mediator, Luis G. Stelzner, an attorney with extensive experience mediating matters of insurance coverage, stated that the negotiations were protracted and conducted at arm's length. The mediator also stated that the positions of the parties were extremely antagonistic, resulting in several efforts at mediation prior to reaching an agreement. In an effort "[t]o eliminate any potential conflict of interest," the mediator stated that
the parties did not engage in any fee negotiations until after they had agreed to the settlement in terms of all benefits to the class members. It was understood from the outset that any negotiated fee would be above and beyond the economic relief which First Colony had already agreed to provide to the Class.
But see In re Cmty. Bank of N. Va., 418 F.3d at 308 (noting that fee negotiations should be delayed until after settlement is approved, rather than "merely until the date the parties allege to have reached an agreement") (internal quotation marks and citation omitted). Lastly, the mediator stated that "every interaction that I observed reflected counsels' very able and adversarial efforts to achieve the best deal possible for their respective clients. At no time during the negotiations did Class Counsel appear to have any interests antagonistic to those of the class." While we are concerned about the limited record and the inability of Appellants to supplement the record given the denial of their discovery requests, we nonetheless conclude that there is sufficient evidence in the record for the district court to find that the settlement negotiations weigh in favor of the proposed settlement.
2. Risks of Litigation
{56} We next address the merits of the claims and the potential expense and duration of trial compared with the recovery under the settlement and possible recovery at trial. "The likelihood of recovery involves the weighing of the strength of the plaintiff's case on the merits against the monies or other relief offered in the settlement and the potential recovery." 4 Conte & Newberg, supra, ง 11:44, at 121-22. The district court made no findings regarding the merits of the Class's claims or the complexity of the issues. As a consequence, we review the evidence to determine whether it is sufficient to enable the district court on remand to find that these factors weigh in favor of the settlement.
a. Merits of the Claims of the Class
{57} Appellants contend that the legal theory of the Class's case is simple: whether First Colony's imposition of modal premiums, which exceed the maximum annual premium disclosed in the policies when the policyholders choose to pay premiums more frequently than annually, constitutes breach of contract, failure to disclose material facts, bad faith, deceptive trade practices, and unjust enrichment. Appellants further contend that the damage calculations as well as potential damage offsets will not involve complex accounting issues because First Colony is able to calculate damages through its computer systems. Accordingly, Appellants claim that "while the Class's theory of liability is novel, this case is not one involving any degree of complexity."
{58} The Class paints a different picture of the litigation and of its claims. The Class points out that there was no appellate decision on the requirements for class certification at the time the parties entered the settlement. Further, the Class states that the certification of the claims regarding the duty of good faith was reversed and remanded in Berry to determine whether New Mexico law conflicts with the law of any other jurisdiction. See Berry, 2004-NMCA-116, ถถ 89-94, 136 N.M. 454, 99 P.3d 1166; cf. Ferrell, 2007-NMCA-017, ถ 47, 141 N.M. 72, 150 P.3d 1022 (noting that if "the ambiguous laws of . . . thirteen jurisdictions" were applied in a class action, class certification would be improper *786 as a matter of law). Therefore, the Class contends that class certification appears both questionable and complex. However, we are not persuaded that the difficulty in class certification weighs in favor of the settlement. As we noted above, settlement is not proper unless certification is proper, and settlement-only class certification is subject to rigorous scrutiny. Amchem, 521 U.S. at 620, 117 S.Ct. 2231. We therefore disregard this argument.
{59} In support of their claim that the likelihood of success for all class members on their claims is questionable, the Class and First Colony also state that as of December 2000, First Colony began including in its term life policies the modal premium factors used for monthly, quarterly, and semi-annual payment modes, and the attending APRs. Further, as of April 2000, First Colony included brochures explaining the modal premium factors and APRs in all premium payment notices sent to existing policyholders. The Parks affidavit indicates that "50-55% of First Colony's then-current term life insurance policyholders received this brochure." The Class and First Colony argue that some policyholders were therefore not likely to succeed on a nondisclosure claim.
{60} On this basis, the Class and First Colony assert that some of Appellants have weak claims. They claim that each of the Hopkins Appellants' policies contains disclosures that state that the premium costs would be higher if they chose to pay more frequently than annually. First Colony also claims that a similar disclosure was made in Treat's life insurance policy. However, nothing in the record supports the additional assertion that the APRs were disclosed. For that reason, it is unclear that any of Appellants have particularly weak claims on this basis.
{61} The Class also asserts that this case is complex because no appellate decision in New Mexico has determined whether an APR constitutes material information that an insurer has a duty to disclose. First Colony asserts that there is no statute and no law of other jurisdictions that requires disclosure of APRs or even recognizes the existence of APRs in the context of insurance premiums paid in installments. Further, the Class states that the meaning of "maximum annual premium" as used in the policies is uncertain, also rendering their breach of contract claim a novel and unclear issue. See Nakashima v. State Farm Mut. Auto. Ins. Co., 2007-NMCA-027, ถ 1, 141 N.M. 239, 153 P.3d 664 (concluding that the fees associated with paying in installments for automobile insurance are not "premium").
{62} In an acknowledgment that the case may be less than straightforward, Appellants admit that First Colony is asserting a novel defense to damages, claiming that its liability, if any, is offset by the administrative costs of permitting premium payments more frequently than annually. Because the parties have not briefed the merits of this claim, we do not discuss it.
{63} We are mindful that consideration of the merits of the claims in the settlement context falls far short of the consideration necessarily undertaken in the trial context. E.g., Grinnell Corp., 495 F.2d at 456 ("It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."); Young v. Katz, 447 F.2d 431, 433-34 (5th Cir.1971) (stating that, because the purpose of settlement is to avoid the time and expense of trial, the court should not finally determine the merits of the claims). Nonetheless, the district court should not approve a settlement without first determining the relative strength or weakness of the Class's claims. This determination is a necessary component of any consideration of the adequacy of the settlement. While the Class did address the merits of its nondisclosure claim to some extent, it failed to address the merits of its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair and deceptive practices, and unjust enrichment. If the Class has decided not to pursue those claims, it should "thoroughly explain[] the reasons for relinquishing pursuit of those issues." Young, 447 F.2d at 434. On remand, the Class should demonstrate to the district *787 court the strength or weakness of its claims through argument on the legal merits and through explanation of the difficulties it might have proving the facts underlying its claims at trial.
b. Duration and Expense of Litigation
{64} Appellants argue that the expense necessary for the trial would be modest, relying on class counsel's representation that the costs incurred from the time of filing of the case until the fairness hearing was $54,342, which includes discovery, "the costliest phase of litigating a case." In its answer brief, the Class contends that Appellants fail to consider the cost of the various notices that need to be sent to each class member, an expense that they claim would be absorbed by the Class if the case went to trial. But see ง 57-12-10(C) (providing that attorney fees and costs be awarded to a party who successfully litigates a claim under the UPA). Further, the Class asserts that modal premium litigation in New Mexico is protracted, pointing out that this case was over four years old at the time of briefing and will be older after the appeal is decided and that Azar at the time of briefing was nearly six years old and is ongoing. Appellants respond by noting that much of the time this case has been pending is attributable to the district court's issuance of a stay pending a decision in Azar.
{65} We agree with the Class that litigation, if it goes forward, will likely be contentious and protracted and might render the action far costlier to prosecute than $54,342. We note, however, that the Class has represented that "there is really no information . . . that [the Class is] not aware of," and it therefore seems that no additional discovery would be necessary. Because it does not appear from the record that the district court considered this factor, we encourage the district court to examine the potential additional cost that litigation would require.
3. Recovery Under the Settlement Compared to Possible Recovery at Trial
{66} The district court made no findings regarding the recovery under the settlement or at trial. Moreover, after review of the evidence, we cannot determine the values the district court used in its analysis; nor can we conclude that there is sufficient evidence in the record to enable the district court to find that this factor weighs in favor of the settlement.
{67} The settlement provides the Class with alternative forms of compensation: members can elect to receive either a certificate for additional life insurance or a cash payment. The settlement divides the Class into four groups according to the time in which the members purchased the life insurance policies. Those in Tier I are entitled to a $40 certificate for additional insurance or $7.50 in a cash payment. Those in Tier II are entitled to a $100 certificate for additional insurance or $30 in a cash payment. Tier III members are qualified to receive a $185 certificate for additional insurance or a $40 cash payment. Lastly, members of Tier IV will receive a $200 certificate for additional insurance or a $50 cash payment. If all members of the Class elect the cash option, the total payment would be $22,998,530. If all members choose the certificate for additional insurance and qualify to purchase additional insurance, the total discount they will receive would be $91,482,860. The Class will also receive detailed written disclosures regarding modal premiums and the applicable APR for the various methods of payment modes. In addition, First Colony has agreed to maintain a toll-free phone number and a website for three years following the effective date of the settlement, which the class members can use regarding the additional costs and APRs associated with their payment options. Finally, First Colony agreed to pay all attorney fees, separately from the other settlement terms, in addition to the recovery to the Class and the out-of-pocket litigation expenses.
{68} With respect to the damages recoverable at trial, Hause estimated that with a class of about 822,097 policyholders from November 9, 1994, through February 29, 2004, the total amount of modal loadings paid is approximately $89.1 million. Assuming that First Colony would be entitled to an offset defense, Hause estimated the total offset amount to be approximately $82 million, for a net result of $7.1 million in damages. It *788 appears from the record that no evidence or argument was submitted with respect to the possibility that some class members might be entitled to tort damages under the Class's breach of the implied covenant of good faith and fair dealing theory or to treble damages under the UPA, see ง 57-12-10(B), although the Class's complaint alleged, and the settlement releases, these claims.
{69} Appellants complain about the unavailability of information upon which the actuary, Hause, based his findings and conclusions. Appellants argue that the use of tiers in apportioning recovery is inappropriate and unfair, particularly because there is no apparent relationship between the cash and certificate offered for each tier. Appellants also argue that even assuming Hause's calculations as to the damages are accurate, the valuation of the Class's recovery is flawed because Hause assumed a 100% Class participation rate and there has been no evidence of the amount of damages that will actually be paid. Finally, Appellants argue that the value of the certificates is lessened because they are non-transferrable and actually benefit First Colony by promoting the sale of additional insurance.
{70} As to their first argument, Appellants do not explain the specific facts that should have been disclosed. Nonetheless, nothing in the record indicates the number of members of each tier, the average damages for members of each tier, or the range of damages. These considerations seem important to a decision approving the fairness and adequacy of the settlement. See Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."). They are certainly necessary to a reasoned decision about the fairness of the settlement as it applies to each individual tier.
{71} We agree with Appellants that the use of tiers is inappropriate without evidence of the fairness of the settlement as to members of each subclass. As we have noted, members of each tier should have representative parties and the lack of representation in this case requires reversal. We do not agree with Appellants' apparent claim that the ratio of cash to certificate should necessarily be the same for all tiers, but if there is a difference, that difference should be explained.
{72} In support of their other arguments, Appellants rely heavily on In re GM Trucks, 55 F.3d at 809, a case that reversed the district court's approval of the settlement, in part based on its improper valuation of coupons for $1000 toward the purchase of a new truck or a $500 certificate transferrable to a third party. Appellants argue that because the estimated value of the settlement in In re GM Trucks was based on assumptions that 34-38% of the class would redeem the coupon and an additional 11% of the class would exercise the transfer option, id. at 807, we should reverse in the present case in which Hause improperly assumed a 100% participation rate.
{73} Although the valuation of the settlement terms in the present case included an assumption of 100% participation, it was expressed as a maximum amount. We agree with Appellants that the district court should have considered the possibility that the actual recovery might have been much less. It may be that the district court did consider that possibility. However, nothing in the record suggests what the actual claims rate might be. Appellants argue that the district court should never "rely upon hypothetical, conjectural estimates of a settlement's value to the class." Although Appellants cite no authority for the proposition that estimates are always improper, and therefore we need not address the argument, In re Adoption of Doe, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984), we nonetheless agree that the district court should have some basis for its analysis. See 4 Conte & Newberg, supra, ง 11:45, at 128 ("At minimum, the court must possess sufficient information to raise its decision above mere conjecture."). Because the district court has not stated the basis for its decision, we remand for the district court to take additional evidence as necessary for proper consideration of this factor.
*789 4. Class Members' Reaction to the Settlement
{74} The number of opt out and objecting class members is an important measure of the support for the settlement; however, silence or acquiescence to a settlement should not always be construed as affirmative support, particularly if the class consists of individual consumers with little stake in the outcome. See In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1137 (7th Cir.1979) (holding that "the preferences of the majority can[not] justify the substantial injustice to the individual rights of the minority"). Nevertheless, the percentage of objecting class members in the present case is remarkably low. Of the approximate 822,000 class members, only fifty objected to the settlement (0.006%), and 603 opted out (0.07%). Although the district court made no findings as to the number of objectors and the manner in which it weighed that factor, during a hearing for the objectors, the district court interrupted Hopkins' attorney to express its concern that there are a small number of objectors, and it considered that fact, the duration of the action so far, and the work of the attorneys. We give deference to the district court's statement about the small number of objectors.
{75} Also, there are a number of affidavits in the record from various people supporting the settlement, a few of which we address. First, the mediator determined that, based on the contested, arm's-length bargaining, the novel issues of law, potential length and expense of trial, the disclosures made, the economic relief of the settlement, and the small percentage of objectors, "the Settlement is a reasonable, fair and adequate compromise of the Action that is in the best interests of the Class." Second, Arthur R. Miller, an author and professor of law at Harvard Law School with extensive experience in civil procedure and class action litigation, concluded in his affidavit that the settlement "is outstanding and properly can be and should be approved by the Court." Third, Brian McDonald, an economic consultant with a Ph.D. and B.A. in economics and extensive knowledge of the economic issues raised by modal premium cases, reviewed the settlement agreement, notice, legal positions, and disclosures in the present case, and concluded in his affidavit that the settlement "provides significant economic benefits to the Class Members," recommending its approval. Fourth, Rivera-Platte, the named Plaintiff and Class Representative in this action, filed an affidavit stating that she was actively involved in the case and that she believes "that the terms of the settlement are fair, reasonable and adequate to the members of the plaintiff class." We conclude that the foregoing evidence is sufficient to enable the district court to find, in its discretion, that this factor weighs in favor of the settlement.
{76} However, the parties' judgment is no substitute for that of the district court. Our review of the record, in light of the fairness framework outlined in paragraph 42, indicates that the district court may have abdicated its duty to carefully evaluate the settlement. Because the record is deficient, we must reverse. The district court on remand should take additional evidence to enable it to weigh the factors we have listed. In particular, the district court may want to consider additional evidence with respect to the merits of the claims, the possible recovery, and the actual recovery under the settlement. Perhaps most importantly, the district court should evaluate the reasonableness of the settlement as it relates to members of each tier.
C. Attorney Fees
{77} Appellants argue that the award of attorney fees, totaling $6.5 million, is unreasonable under either the lodestar or percentage-of-recovery (POR) method of calculating fees. This Court's recent opinion in Microsoft, 2007-NMCA-007, 140 N.M. 879, 149 P.3d 976, the first New Mexico case on class action attorney fees, governs our analysis. In Microsoft, we held that the district court is required "to review the reasonableness of any award of fees in a class action. A court acts as a fiduciary for class members and, in doing so, weighs the interests of the class in light of class counsel's efforts on their behalf." Id. ถ 12 (citation omitted). This Court reviews the district court's decision *790 for abuse of discretion, but we review de novo whether the decision was based on a misapprehension of the law. Id. ถ 6.
{78} In Microsoft, we upheld the award of $6.1 million in attorney fees in a statewide class action involving a recovery to the class valued at approximately $24.5 million. Id. ถ 60. In doing so, we held that the district court has discretion to use either the POR method or the lodestar method. Id. ถ 47. We concluded that the district court did not err by using the POR method to determine the award and the lodestar method to check for the reasonableness of the award. Id. ถถ 1, 39, 61-64. The district court in Microsoft evaluated the benefit to the class and awarded an attorney fee in the amount of 25% of the district court's valuation of the recovery to the class. Id. ถ 60. We held that the district court did not abuse its discretion in awarding 25%. Id. In regard to the district court's use of the lodestar method to ensure reasonableness, we found no abuse of discretion in its approval of a multiplier of 3. Id. ถ 74. We stated that the district court "reached its decision after careful consideration of all pleadings, evidence, and oral argument" and "expressly stated that it considered the Rule 16-105 [NMRA] factors, and ample evidence exist[ed] in the record to support the court's decision." Id. ถถ 78, 88.
{79} In contrast, in this case, the district court characterized the attorney fees as reasonable when it granted class counsel's application and awarded $6.5 millionโan amount that First Colony agreed to payโwithout further explanation. However, at the fairness hearing, the district court expressly stated that the parties should be mindful that New Mexico does not prefer application of the lodestar method. The record contains no indication of the manner in which the district court calculated attorney fees or arrived at the conclusion that $6.5 million is reasonable. Class counsel argued that the fees are presumptively reasonable because First Colony agreed to pay them separately from the settlement to the Class and because they are within the range of reasonableness as demonstrated by case law and the affidavits filed. We rejected this contention in Microsoft, stating that "the court has a duty to protect class interests and ensure that the fee is reasonable, even when the fee application is unopposed." Id. ถ 42.
{80} Appellants argue that the district court should wait until the end of the claims period to determine the reasonableness of the attorney fees, so that it will know the actual benefit of the settlement conferred on the Class. The district court refused to do so. We do not agree with Appellants that the district court cannot determine the reasonableness of attorney fees before the number of class members who will claim their benefits is clear. In Microsoft, we noted that an award to class counsel should not be diminished when a class member makes an informed decision not to participate in a recovery because the class member's right to participate was a benefit created by the efforts of class counsel. Id. ถ 26. Thus, the district court is entitled to estimate a value of the settlement before any claims are made, provided that it does not abuse its discretion and that it relies on evidence in the record.
{81} Based upon the record's lack of detail into the many factors involved in the lodestar method, it appears that the district court rejected that method of calculating attorney fees. In the answer brief, class counsel represents that the district court accepted the "percentage of the benefit" approach, based on the calculations that appear in the affidavit from Prof. Miller, and based on Prof. Miller's opinion that the attorney fee award is appropriate. The affidavit contains calculations based on a 100% participation rate (an admittedly artificial method of evaluation), the general contingency fee principle, and average awards of attorney fees in other cases. This is the entire state of the record as to attorney fees.
{82} Even assuming that the district court did apply the POR method in this case, the district court did not articulate the manner in which it applied that method. Specifically, the district court did not state the value of the settlement, which would be the appropriate number from which to calculate the percentage. In cases in which the amount of recovery is variable and difficult to ascertain, and the POR method is applied, courts take different approaches. The obvious *791 concern is that the attorney fee award could potentially dwarf the actual distribution to the class. See Int'l Precious Metals Corp. v. Waters, 530 U.S. 1223, 1224, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000) (denying certiorari, but expressing concern that there "be some rational connection between the fee award and the amount of the actual distribution to the class" to avoid arrangements that "decouple class counsel's financial incentives from those of the class"). As we discussed above, we are skeptical of both figures submitted by the Class purporting to value the recovery. There is no indication in the record that the district court considered the total recovery or determined an appropriate percentage of recovery for this case. Because award of attorney fees is properly a function of the district court rather than an appellate court, we decline to express an opinion as to the proper amount of attorney fees. Instead, we remand to the district court's sound discretion.
{83} We believe that Microsoft gives guidance on what is expected of the district court in this case. Microsoft requires that under either methodology, the district court must assure that the fee awarded is reasonable. Microsoft, 2007-NMCA-007, ถ 76, 140 N.M. 879, 149 P.3d 976. In New Mexico, a court determines the reasonableness of attorney fees by applying the Fryar factors found in Rule 16-105. Microsoft, 2007-NMCA-007, ถ 76, 140 N.M. 879, 149 P.3d 976. In the present case, the district court gave no indication that it applied either the POR or lodestar method of calculating fees or that it independently examined whether it was reasonable under Rule 16-105 or in any other manner. Further, there is no indication in the record that the parties presented any evidence consistent with those factors. Meaningful review of the reasonableness of the present attorney fee award is not possible on the record and findings before us.
{84} The district court may decide on remand whether it would be most appropriate to use the lodestar or POR method of calculation, and if the POR method is applied, then it could (1) calculate the fees based upon a reasonable estimate of the claims rate, (2) wait until the end of the claims period to determine a reasonable fee award based on the Class's actual benefit from the settlement, or (3) use the total benefit achieved by the attorneys as the measure for attorney fees. Each method has advantages and disadvantages, and each can provide a reasonable fee award. See generally Hailyn Chen, Attorneys' Fees and Reversionary Fund Settlements in Small Claims Consumer Class Actions, 50 UCLA L.Rev. 879 (2003) (explaining the risks and advantages of each approach to determining the reasonableness of attorney fees when the benefits to the class are not easily ascertainable and the unclaimed settlement benefit reverts back to the defendant). Regardless of the method used, the district court should assure the reasonableness of the award by considering the Rule 16-105 factors.
RIGHT OF UNNAMED CLASS MEMBERS TO INTERVENE
{85} Appellants Michael Hopkins, Robin Hopkins, Martin Sir, Paul Holley, and Phillip Mickens filed motions to intervene in the district court. Appellants challenge the denial of their motions. The Hopkins Appellants concede that we need not address this issue if we decide that they have a right to appeal under Devlin. Appellants Martin Sir, Paul Holley, and Phillip Mickens, however, make no such concession. Because we are remanding and because Appellants challenge the denial of their requests for discovery, we address Appellants' right to intervene. Intervention will affect the proceedings on remand as well as Appellants' right to discovery.
{86} We review the denial of a motion to intervene for abuse of discretion. Wilson v. Mass. Mut. Life Ins. Co., 2004-NMCA-051, ถ 21, 135 N.M. 506, 90 P.3d 525. A district court abuses its discretion when it applies the law incorrectly. Id. In this case, it appears from the transcript that the district court applied Rule 1-023 instead of Rule 1-024.
{87} The district court apparently believed Rule 1-024 to be inapplicable in class actions and instead applied the language from Rule 1-023(D). The district court made the following *792 statement at the conclusion of the hearing on intervention:
I think, you know, when we're looking at these rules, I understand Rule 1-024 has intervention as a right and permissive intervention; but I think the more specific rule is Rule 1-023. If the Court allows intervention, it must impose conditions on the representative parties or the Intervenor. In this particular matter, I'm concerned. On the one hand, you know, Mr. Geran, you know, I certainly appreciate your position [that the court should make efforts to welcome objectors in class actions], and that is a concern. On the other hand, we have rules. If we didn't have any to give us direction, I think the doors would be wide open.
The district court then denied the motions.
{88} But Rule 1-023 does not address the right of parties to intervene. Instead, Rule 1-023 establishes requirements for and types of class actions. Rule 1-023(D)(2), (3) further provides that:
the court may make appropriate orders:
. . . .
(2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such a manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; [or]
(3) imposing conditions on the representative parties or on intervenors[.]
This rule has no bearing on the rights of parties to intervene; rather, it addresses the district court's ability to require notice to the class members of the right to intervene. Therefore, the district court applied the wrong rule. It is Rule 1-024 that governs intervention in New Mexico.
{89} Because the district court failed to apply the correct standard, it abused its discretion. We understand that New Mexico cases provide limited guidance on the application of Rule 1-024 to class action objectors. Therefore, because the pertinent portions of Rule 1-024 are similar to the federal rule, the district court may utilize federal case law in its analysis. Cf. Romero, 2005-NMCA-035, ถ 35, 137 N.M. 229, 109 P.3d 768 (using federal case law for guidance in a Rule 1-023 question). Under Rule 1-024(A)(2), intervention is of right
when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
When members of the class timely seek to intervene in class actions, the only question that is seriously at issue is whether the intervenors' interest is adequately represented. See In re Cmty. Bank of N. Va., 418 F.3d at 314 ("In the class action context, the [interest and impairment] prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation."). We do not decide whether the motions in this case should be granted or denied because the grant or denial of motions to intervene is properly left to the sound discretion of the district court. Cf. Wieneke v. Chalmers, 73 N.M. 8, 12, 385 P.2d 65, 68 (1963) (stating that grant or denial of discovery motions is left to the sound discretion of the district court). We therefore reverse and remand this issue to the district court for application of Rule 1-024.
RIGHT OF UNNAMED CLASS MEMBERS TO DISCOVERY
{90} Finally, Appellants argue that their requests for discovery should have been granted. Because they were not parties at the time they requested discovery, we must first determine the standard to govern discovery by unnamed class members in New Mexico. We review de novo as a question of law this issue of first impression. Cf. State v. Torres, 1999-NMSC-010, ถ 28, 127 N.M. 20, 976 P.2d 20 (stating that although admission of evidence is discretionary, we review de novo questions of law such as the standard *793 that should apply). We must next determine whether the district court abused its discretion in denying discovery. See Hartman v. Texaco Inc., 1997-NMCA-032, ถ 20, 123 N.M. 220, 937 P.2d 979.
{91} Discovery by parties in New Mexico district courts is governed by Rules 1-026 to 1-037 NMRA. Under Rule 1-026(B)(2)(a)-(c), the district court should limit discovery if it determines that:
(a) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
(b) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
(c) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.
Appellants argued in the discovery hearing that this standard applies to them because they are parties under the reasoning in Devlin. We disagree.
{92} Devlin holds that unnamed class members are parties for purposes of appeal. Devlin, 536 U.S. at 8-11, 122 S.Ct. 2005. It does not hold, as Appellants argue, that unnamed class members are parties for all purposes. E.g., id. at 10, 122 S.Ct. 2005 (stating that unnamed class members are not parties for the purpose of diversity). In class actions, the rights of unnamed class members are protected by the rigorous scrutiny of the district court and by the procedures in Rule 1-023. See, e.g., Piambino v. Bailey, 757 F.2d 1112, 1139 (11th Cir.1985) ("[T]he district judge has a heavy duty[.]"). These procedures are in place because unnamed class members do not have all of the same rights as parties. We therefore disagree with Appellants that Devlin requires reversal of the district court's denial of their motions for discovery.
{93} We agree with the Class's and First Colony's assertion that allowing unnamed class members the discovery rights of parties would interfere with the efficient administration of class actions. Class actions are designed to "benefit the courts, attorneys, and litigants by promoting judicial economy and efficiency." U.S. Xpress, Inc. v. N.M. Taxation & Revenue Dep't, 2005-NMCA-091, ถ 18, 138 N.M. 55, 116 P.3d 846 (internal quotation marks and citation omitted), rev'd on other grounds, 2006-NMSC-017, 139 N.M. 589, 136 P.3d 999. If unnamed class members were permitted to engage in unfettered discovery, the ability of class litigants to complete their actions would be impaired.
{94} We nevertheless conclude that a rule preventing all discovery by unnamed class members would be unfair and unworkable. As the Supreme Court noted in Devlin, unnamed class members should have "the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court." Devlin, 536 U.S. at 10, 122 S.Ct. 2005. Ordinarily it is enough that they can state their objections at the fairness hearing and appeal if their objections are not satisfactorily addressed by the district court. See, e.g., Newby v. Enron Corp., 394 F.3d 296, 306 (5th Cir.2004) (holding that denial of discovery is not an abuse of discretion unless objectors' counsel would be "groping in the darkness" without it) (internal quotation marks and citation omitted). But, in some instances, discovery by unnamed class members may be necessary. See, e.g., In re Cmty. Bank of N. Va., 418 F.3d at 316-17 (holding that while objectors do not have "an absolute right to discovery," the trial court has a "duty to employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement," which may include granting objectors discovery) (internal quotation marks and citations omitted). Additionally, a court should have discretion to "limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement." 4 Conte & Newberg, supra, ง 11:57, at 184.
*794 {95} We therefore must review the district court's decision to determine whether it abused its discretion. We are concerned about the district court's decision for two reasons. First, as we have discussed, the evidence submitted in support of the settlement was insufficient as a matter of law. As the Class and First Colony both discuss in their briefs, the district court would not have abused its discretion in denying discovery if it had sufficient information before it to determine whether to approve the settlement. But, in this case, we have determined that there was not sufficient information in the record, which consists solely of affidavits providing limited information. The district court should therefore have sought to supplement the record. Permitting Appellants discovery is one method that the district court might have employed to remedy this deficiency.
{96} Second, we are concerned about the argument made to the district court about discovery of the settlement negotiations. Appellants contended that they needed discovery of the settlement communications in order to show that improper conduct or inadequate representation took place. The Class argued that Appellants should not be allowed any discovery because they had not proven collusion through other means, citing Lobatz v. U.S.W. Cellular of Cal., Inc., 222 F.3d 1142, 1147-48 (9th Cir.2000). We agree with the general principle in Lobatz that because of the sensitivity of settlement negotiations, discovery is not warranted unless a foundation is laid with other evidence. But the Class's argument ignores the fact that settlement negotiations can constitute evidence of more than just collusion. See Dusek v. Mattel Inc., 141 Fed.Appx. 586, 588 (9th Cir.2005) (applying Lobatz to requests for discovery of settlement negotiations for the purpose of showing a conflict of interest). In this case, discovery of settlement negotiations might have enabled Appellants to shed light on the issue of adequate representation. As we have stated, the Class did not produce sufficient evidence that representation was adequate.
{97} We also note that, while Appellants characterize their objective as "discovery," the majority of the information that they seek is information that has already been discovered by the Class. Appellants primarily seek disclosures from class counsel. When objectors have been properly denied independent discovery, that denial is frequently based on the premise that they could have availed themselves of the discovery already undertaken. E.g., In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 325 (3d Cir.1998) (upholding denial of discovery in part because the objector had the opportunity to examine discovery of the parties but failed to do so); Jones, 741 F.2d at 325 ("The failure to conduct an evidentiary hearing when all parties concerned with the settlement had notice of the settlement hearing, the opportunity to be heard, and access to the fruits of detailed discovery, is not a violation of due process."); Weinberger v. Kendrick, 698 F.2d 61, 79 (2d Cir.1982) (holding that discovery and cross-examination were properly denied when objectors had "complete access" to the parties' materials).
{98} We conclude that Appellants have no absolute right to discovery, but hold that the district court should grant discovery when the objectors' request is reasonable and when it would permit "meaningful participation in the fairness hearing without unduly burdening the parties or causing an unnecessary delay." In re Domestic Air Transp. Antitrust Litig., 144 F.R.D. 421, 424 (N.D.Ga.1992). We therefore reverse and remand to the district court for application of this standard. Discovery may become unnecessary if the Class supplements the record with sufficient evidence to enable the district court to fairly determine whether the settlement should be approved. If the district court on remand determines that Appellants should be allowed to intervene, the successful intervenors may again request discovery, which should be granted if they meet the requirements in Rules 1-026 to 1-037.
CONCLUSION
{99} We reverse the orders of the district court denying intervention and discovery and approving the settlement and remand for *795 further proceedings consistent with this opinion.
{100} IT IS SO ORDERED.
WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.